[No. 8666–9–I.   Division One.   December 14, 1981.]

SEA–PAC COMPANY, INC., ET AL, *Respondents,* v. THE DEPARTMENT OF FISHERIES, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *Paul S. Majkut, Assistant,* for appellant.

*Craig P. Hayes,* for respondents.

JAMES, C.J.—At bench trial, plaintiff Sea–Pac Co., Inc., was awarded judgment against defendant State of Washington in the sum of $15,369.25, which amount represented one–half of the "privilege fee" which it paid pursuant to RCW 75.32.030 in the years 1978 and 1979 for fish purchased from "treaty Indians."[1] We reverse.

At all times relevant to the issues in this case, RCW 75.32.020 provided that

> In addition to all other taxes, licenses or fees provided by law there shall be paid to the state of Washington by those engaged in the fishing industry in this state the privilege fees and fish sales taxes as provided for in this chapter.

In summary, the statutory scheme established by RCW 75.32 required an "original receiver" to not only pay a privilege fee but also to collect from a person selling foodfish or shellfish to an original receiver the amount of the fish sales taxes and remit them to the State. The specific provision of the "Fisheries Code of the State of Washington," RCW 75.08.010, which gives rise to this controversy, is RCW 75.32.033 which provides that "the amount of the sales tax collected shall be credited against" the privilege fee owed under RCW 75.32.030. As found by the trial judge, Sea–Pac purchased fish from "both treaty Indian fisherman [*sic*] and non–treaty fishermen." Finding of fact No. 1. Treaty Indian fishermen were and are exempt from the "fish sales tax" imposed by RCW 75.32.055. Consequently, Sea–Pac made no sales tax deductions from purchases from treaty Indians. The trial judge found:

> As of January 31, 1980, Sea–Pac Co., Inc. paid $15,464.73, to the State of Washington. This amount represents the monies paid to the State of Washington which the plaintiff, Sea–Pac Co., Inc., was not allowed to deduct from the treaty Indian fishermen pursuant to

---

[1]RCW 75.32 was repealed by Laws of 1980, ch. 98 with a savings clause and authority to collect taxes due before July 1, 1980.

RCW 75.32.080, or credit against the privilege fee pursuant to RCW 75.32.033, for the reason that treaty Indian fishermen are immune from the tax imposed by RCW 75.32.055 and, accordingly, the deduction provision of RCW 75.32.080 and the credit provision of RCW 75.32-.033 are inapplicable.

Finding of fact No. 6.

The classifications as set forth in the taxing statutes set forth above are unreasonable, unnatural, not founded upon some just and rational basis, rule, or distinction. They are arbitrary, oppressive, hostile, and capricious. As a result, the taxing statutes which require an "original receiver" to pay a greater privilege fee than an "original receiver" not dealing with treaty Indians, is in violation of the equal protection clauses of the State and Federal Constitutions.

Finding of fact No. 7. The trial judge concluded:

That the taxing statutes, so far as they require an "original receiver" dealing with treaty Indians to pay a higher privilege tax is arbitrary and capricious and in violation of the equal protection clauses of the State and Federal Constitutions.

Conclusion of law No. 1.

That the plaintiff, Sea–Pac Co., Inc., having paid a higher privilege fee with respect to purchases from treaty Indian fisherment [*sic*], is entitled to a refund of said amounts.

Conclusion of law No. 2. We do not agree.

■ A review of the cases involving an equal protection challenge to state taxing schemes establishes that courts generally defer to the judgment of the state legislatures. J. Nowak, R. Rotunda & J. Young, *Constitutional Law,* ch. 11, at 361 (1978). Washington is no exception. As stated in *Boeing Co. v. State,* 74 Wn.2d 82, 86, 442 P.2d 970 (1968),

our later cases have emphasized that the legislature has a broad discretion in making classifications, holding that a classification will not be struck down if any state of facts reasonably can be conceived that would sustain it. An enactment is presumptively valid, and the burden is upon the challenger to prove that the questioned classification does not rest upon a reasonable basis. *Hemphill v.*

*Tax Comm'n,* 65 Wn.2d 889, 400 P.2d 297 (1965), *appeal dismissed,* 383 U.S. 103, 15 L. Ed. 2d 615, 86 Sup. Ct. 716 (1966).

■ The statutory scheme of RCW 75.32 does not create a classification which results in the violation of the equal protection clauses of the state and federal constitutions. No class limited to those who purchased only from treaty Indians is created. Original receivers are free to purchase, as did Sea–Pac, from both treaty Indian fishermen and from fishermen who are not treaty Indians. The "original receiver" privilege tax is assessed equally upon all "original receivers," regardless of where or by whom the fish were caught. All original receivers may deduct the amount of fishermen taxes collected. No deductions are allowed any original receiver for fish purchased from nontaxpaying treaty Indians.

In *United States v. County of Fresno,* 429 U.S. 452, 50 L. Ed. 2d 683, 97 S. Ct. 699 (1977), the County of Fresno imposed an annual use tax upon United States Forest Service employees based upon the value of their possessory interest in housing furnished them in national forests. The equal protection challenge that the tax was discriminatory because imposed only on real property renters of property which was exempt from real estate taxes was rejected.

> Although the tax is imposed by the appellee counties on renters of real property only if the owner is exempt from taxation—and consequently is not imposed on the vast majority of renters of real property in California—the tax is not for that reason discriminatory. In this respect this case is governed by *United States* v. *City of Detroit,* 355 U. S. 466 (1958). There the city of Detroit imposed a use tax on those who used tax–exempt property owned by the United States. The tax was measured by the value of the property. With respect to nonexempt property, a similar tax was imposed on the owner and none on the user. In answering an argument that the tax discriminated against those dealing with the Federal Government, the Court said:
>> "As suggested before the legislature apparently was trying to equate the tax burden imposed on private

enterprise using exempt property with that carried by similar businesses using taxed property. Those using exempt property are required to pay no greater tax than that placed on private owners *or passed on by them to their business lessees." Id.,* at 473–474. (Emphasis added.)

Similarly, here the State of California imposes a property tax on owners of nonexempt property which is "passed on by them to their . . . lessees." Consequently, the appellants who rent from the Forest Service are no worse off under California tax laws than those who work for private employers and rent houses in the private sector.

*United States v. County of Fresno, supra* at 464–65.

Although the RCW 75.32 taxing scheme might appear to be bizarre, it is consistent with the expressed legislative intent to extract fees and taxes from all persons benefited by the State's salmon enhancement program.

The long range economic development goals for the state of Washington shall include the restoration of salmon runs to provide an increased supply of this valuable renewable resource for the benefit of commercial and recreational users and the economic well–being of the state. For the purpose of providing funds for the planning, acquisition, construction, improvement, and operation of salmon enhancement facilities within the state it is the intent of the legislature that the revenues received from fees from the issuance of vessel delivery permits, charter boat licenses, trolling gear licenses, gill net gear licenses, purse seine gear licenses, reef net gear licenses, anadromous salmon angling licenses and all moneys received from all privilege fees and fish sales taxes collected on fresh or frozen salmon or parts thereof be utilized to fund such costs.

The salmon enhancement program funded by commercial and recreational fishing fees and taxes shall be for the express benefit of all persons whose fishing activities fall under the management authority of the Washington department of fisheries and who actively participate in the funding of the enhancement costs through the fees and taxes set forth in chapters 75.28 and 75.32 RCW or through other adequate funding methods.

RCW 75.18.100.

Treaty Indians are not subject to the fishermen's tax, but they are beneficiaries of the State's enhancement program. The taxing scheme insures that an equal tax be collected for all salmon caught in waters benefiting from the enhancement program. Original receivers who purchase from nontaxpaying treaty Indians are free to negotiate the price, knowing that they must pay a full privilege fee.

Reversed.

WILLIAMS and CORBETT, JJ., concur.

Reconsideration denied January 27, 1982.

Review denied by Supreme Court April 9, 1982.