[No. 52590–1. En Banc. September 11, 1986.]

HIGH TIDE SEAFOODS, ET AL, *Appellants*, v. THE STATE OF WASHINGTON, *Respondent*.

*Ronald N. Richards* and *Jane Cantor Shefler,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Maureen Hart, Assistant,* for respondent.

DOLLIVER, C.J.—Plaintiffs challenge the legality and constitutionality of Washington's tax on enhanced food fish and request a refund for all taxes paid between July 1, 1980, and March 31, 1983, under RCW 82.27. Plaintiffs appeal from a summary judgment awarded in favor of the State of Washington dismissing their claim.

Plaintiff High Tide Seafoods is a Washington partnership. Plaintiffs James L. Shefler and Ernest J. Vail are its sole owners. Plaintiffs are engaged in the business of purchasing fresh salmon from fishermen, processing the fish, and wholesaling them to third parties. The salmon is purchased from both treaty Indians and nontreaty fishermen.

Pursuant to RCW 82.27, plaintiffs collected and paid excise taxes of $153,041.13 for the period from July 1, 1980, through March 31, 1983. In purchasing salmon from nontreaty fishermen, plaintiffs deducted from the purchase price an amount equal to a tax at one-half the rate levied under RCW 82.27.020 as allowed by RCW 82.27.020(2). Pursuant to the federal law, plaintiffs did not deduct that same amount in purchasing salmon from treaty Indian fishermen (an amount of $97,852.79).

Plaintiffs petitioned the Department of Revenue for a refund of one-half of the tax amount paid to treaty Indian fishermen for salmon purchases. Plaintiffs' refund request was denied by the Department in the determination in In re High Tide Seafoods, No. 82-128 (May 26, 1982) and in the final determination in In re High Tide Seafoods, No. 82-128A (Nov. 16, 1982). Plaintiffs appealed the Department's decision to Thurston County Superior Court seeking a refund of *all* fish tax paid, with interest, and declaratory and injunctive relief. They requested a judgment finding the taxes imposed by RCW 82.27 unlawful and enjoining

the State from imposing and collecting the tax authorized by RCW 82.27. Plaintiffs moved for summary judgment; but the trial court continued adjudication of the matter pending our decision in *Department of Fisheries v. De-Watto Fish Co.*, 100 Wn.2d 568, 674 P.2d 659 (1983).

Following the decision in *DeWatto,* both sides moved for summary judgment. The trial court entered an order granting summary judgment in favor of the State of Washington and denied the plaintiffs' similar motion. Plaintiffs' appeal was transferred to us pursuant to RAP 4.3.

Plaintiffs raise numerous legal and constitutional issues regarding RCW 82.27, the tax on enhanced food fish. These issues are approximately the same issues plaintiffs raised as amici curiae in the *DeWatto* case and which were not necessary to reach. Although we were interpreting the previous fish tax statute (former RCW 75.32), the holdings in *DeWatto* still cover and control most of the issues in the instant case. We affirm summary judgment awarded in favor of the State of Washington.

RCW 82.27 replaced the former fish tax statute. It is a single excise tax and encompasses no sales tax and no sales tax credit provision. Persons liable for the tax, however, still may pass on to their sellers one-half of the economic burden of the tax. RCW 82.27.020(2). Plaintiffs concede the tax impact of RCW 82.27 upon them is the same as the tax impact of former RCW 75.32.

█ Statutes are presumed constitutional and a party challenging a statute has the burden of establishing its invalidity beyond a reasonable doubt, as well as rebutting the presumption that all legally necessary facts exist. *Higher Educ. Facilities Auth. v. Gardner,* 103 Wn.2d 838, 843, 699 P.2d 1240 (1985). A statute, if possible, should be construed to be constitutional. *State v. Moore,* 79 Wn.2d 51, 58, 483 P.2d 630 (1971). The issues which follow are plaintiffs' challenges to the statute in effect between 1980 and 1983.

## I

Plaintiffs claim RCW 82.27 is a property tax because the tax is levied upon the owner's "ownership" of the fish. RCW 82.27.020(1). They argue that as a property tax it fails to meet the requirements of Const. art. 7, §§ 1 and 2 because it is not a uniform tax. The State claims the tax is properly an excise tax because the tax is imposed upon an owner's exercising control over the fish for "commercial" purposes. We agree with the State.

RCW 82.27.020(1) provides:

> In addition to all other taxes, licenses, or fees provided by law there is established an *excise tax* on the possession of food fish and shellfish for commercial purposes as provided in this chapter. The tax is levied upon and shall be collected from the owner of the food fish or shellfish whose possession constitutes the taxable event. The taxable event is the first possession by an owner after the food fish or shellfish have been landed. Processing and handling of food fish and shellfish by a person who is not the owner is not a taxable event to the processor or handler.

(Italics ours.) *See* Laws of 1980, ch. 98, § 2, p. 303.

■ This court distinguished a property tax from an excise tax in *Black v. State,* 67 Wn.2d 97, 406 P.2d 761 (1965). In *Black,* we defined a property tax as a tax on things tangible or intangible and an excise tax on the right to use or transfer things. *Black,* at 99. The tax in *Black* involved a tax on the leasing of tangible personal property and was held to be an excise tax, not a property tax.

> [T]he obligation to pay an excise is based upon the voluntary action of the person taxed in performing the act, enjoying the privilege or engaging in the occupation which is the subject of the excise, and the element of absolute and unavoidable demand, as in the case of a property tax, is lacking.

*Black,* at 99 (quoting 1 T. Cooley, *Taxation* § 46, at 132 (4th ed. 1924)).

If a tax is imposed on the value of the property, it may be a property tax. If levied upon the privilege of doing

business, it is an excise tax. *Clifford v. State,* 78 Wn.2d 4, 469 P.2d 549 (1970). A tax for the beneficial use of property as distinguished from a tax on property itself has long been established law. *United States v. Detroit,* 355 U.S. 466, 2 L. Ed. 2d 424, 78 S. Ct. 474 (1958).

In this case, the fish tax is not imposed merely by reason of ownership or possession of the fish. RCW 82.27-.020(1) refers to the tax imposed as an excise tax with the first possession by an owner as the taxable event. This "owner" becomes liable for the fish tax by exercising control over the fish for commercial purposes. Plaintiffs cite *Jensen v. Henneford,* 185 Wash. 209, 53 P.2d 607 (1936) for the proposition that because ownership is the taxable event the fish tax is a property tax. Besides being somewhat modified by more contemporary cases (*see, e.g., P. Lorillard Co. v. Seattle,* 83 Wn.2d 586, 521 P.2d 208 (1974); *Cary v. Bellingham,* 41 Wn.2d 468, 250 P.2d 114 (1952)), this court also stated in *Jensen* that when a tax is levied for the exercise of a privilege granted or permitted by the State, it may be considered an excise tax. *Jensen v. Henneford, supra* at 218. The event causing this food fish tax to be levied is the *transfer* of ownership from the fisherman to the fish purchaser. It is not based just on the ownership of the fish.

Plaintiffs set forth no convincing authority which would classify the tax in RCW 82.27 as a property tax. The tax is imposed upon an owner's exercising control over fish for purposes of disposing of them for profit, and as such, it is an excise tax and is not subject to the uniformity requirements of Const. art. 7, §§ 1 and 2.

## II

Plaintiffs claim the present tax is an unlawful delegation of the Legislature's taxing authority because it allows the person liable for the fish tax to choose whether to deduct one–half of the tax levied from the price paid to the non-treaty fishermen. We do not agree.

Plaintiffs point out that RCW 82.27.020(2) provides a person in possession of food fish "*may deduct* from the

price paid to the person from which such food fish . . . [is] purchased an amount equal to a tax at one–half the rate levied in this section upon these products." (Italics ours.) While this is true, the owner whose first possession of the food fish constitutes the taxable event is liable for the tax. That person alone is responsible for the tax regardless of whether a deduction is taken pursuant to RCW 82.27-.020(2). "The tax is levied upon and shall be collected from the owner of the food fish . . . whose possession constitutes the taxable event." RCW 82.27.020(1). This is the legislative authority to impose the tax which is nondelegable. *See* 1 T. Cooley, *Taxation* § 78, at 193–94 (4th ed. 1924). The language cited by plaintiffs merely allows the parties liable for the tax to pass on to their sellers part of the burden of the tax; it does not trench upon the legislative function.

The Legislature has established a clear tax structure for liability. The tax is not discretionary; the first owner of the fish is liable for the full amount of the tax. No legislative power or authority is granted by RCW 82.27 to a taxpayer.

### III

The State claims plaintiffs lack standing to raise issues regarding violations of the Indian treaty rights, freedom of association, equal protection, and Indian commerce clause because plaintiffs' contentions are based solely on assertions of the rights of third parties. The State argues that unless plaintiffs show they are harmed by the statute *and* are within the zone of interests protected by the guaranties at issue, they cannot challenge the validity of the statute. The plaintiffs claim they have standing to raise these issues, especially since the statute will encourage taxpayers to reduce the price they pay to treaty Indian fishermen thereby rendering RCW 82.27 unconstitutional.

The prevailing rule requires a person or party seeking to challenge the constitutionality of a law, on behalf of itself or a representative class, to show that the particular action complained of has operated to the person's or party's own prejudice. *Wenatchee Reclamation Dist. v. Mustell,*

102 Wn.2d 721, 727, 684 P.2d 1275 (1984). Thus, for a plaintiff to receive "standing" to bring a lawsuit, it must allege a personal injury fairly traceable to the challenged conduct and likely to be redressed by the requested relief. *Allen v. Wright,* 468 U.S. 737, 82 L. Ed. 2d 556, 104 S. Ct. 3315 (1984); *Grove v. Mead Sch. Dist. 354,* 753 F.2d 1528 (9th Cir. 1985). If a plaintiff lacks standing to bring a suit, courts lack jurisdiction to consider it. *Grove v. Mead Sch. Dist. 354, supra.*

Plaintiffs raise issues regarding the validity of the food fish tax claiming they suffer economic and constitutional injuries because they cannot deduct a portion of their excise tax when they buy fish from treaty Indian fishermen. Even if plaintiffs can show injury, they will not be able to prove their injury falls within the zone of the fishing rights of treaty Indians. Plaintiffs do not have standing to challenge RCW 82.27 by asserting treaty rights of Indians.

## IV

Plaintiffs do appear, however, to have standing regarding their issues of freedom of association, equal protection, and Indian commerce clause because a pecuniary interest is involved. Although the State claims plaintiffs raise these issues merely as a camouflage to raise the Indian treaty rights issue which plaintiffs do not have standing to raise, to forgo consideration of the constitutional merits of a statute and to wait for a new challenge by injured third parties would foster repetitive and time–consuming litigation under the guise of caution and prudence. *Craig v. Boren,* 429 U.S. 190, 193–94, 50 L. Ed. 2d 397, 97 S. Ct. 451 (1976). Thus, although plaintiffs' arguments, in light of *Department of Fisheries v. DeWatto Fish Co.,* 100 Wn.2d 568, 674 P.2d 659 (1983), are tenuous at best, we will resolve them now.

### Freedom of Association

Plaintiffs claim because they cannot deduct half of their excise tax liability when buying fish from treaty Indian fishermen, they are discouraged from dealing with treaty

Indian fishermen. This, plaintiffs assert, causes an impermissible "chilling effect" on their First Amendment right of freedom of association.

■ Freedom of association does not guarantee the right to engage in business free from taxation. Even if a tax tangentially impacts First Amendment protections, it can nonetheless be valid. *Sears, Roebuck & Co. v. Department of Rev.*, 97 Wn.2d 260, 643 P.2d 884, *appeal dismissed*, 459 U.S. 803 (1982). RCW 82.27 does not prohibit, regulate, or interfere with any associational activities of the plaintiffs.

## EQUAL PROTECTION

Plaintiffs claim their equal protection guaranties are violated because RCW 82.27 treats a fish purchaser purchasing fish from treaty Indian fishermen in a less favorable manner than it treats a fish purchaser purchasing fish from nontreaty fishermen. We do not agree.

■ The Washington Court of Appeals held the statutory scheme of the old food fish tax (former RCW 75.32) did not create a classification which violated the equal protection clauses of the state and federal constitutions. *Sea–Pac Co. v. Department of Fisheries*, 30 Wn. App. 659, 638 P.2d 92 (1981), *review denied*, 97 Wn.2d 1010 (1982). In *Sea–Pac*, the old food fish tax was challenged alleging equal protection guaranties were violated because a greater tax was imposed on purchases from treaty fishermen than was imposed on purchases from nontreaty fishermen. However, focusing on the tax scheme as a whole, the Court of Appeals found no violation occurred under former RCW 75.32; the "original receiver's" privilege tax was assessed equally upon all "original receivers" regardless of where or by whom the fish were caught. All original receivers could deduct the amount of taxes collected from the fishermen from their privilege tax and no deductions were allowed in their privilege tax for fish purchased from nontaxpaying treaty Indians. The court held RCW 75.32 did not create a classification which resulted in the violation of the equal protection clause of the state and federal constitutions.

The present food fish tax scheme operates in a similar manner. All "owners" may deduct one–half of their excise tax from nontreaty fishermen and no deductions are allowed for fish purchased from treaty Indians. The decision in *Sea–Pac* is consistent with this court's finding in *DeWatto.* In *DeWatto,* this court found the former food fish tax placed an equal economic burden on all fish sales regardless of when or from whom the fish was purchased. *DeWatto,* at 578. RCW 82.27 creates a similar tax scheme; it does not violate any equal protection guaranties.

### INDIAN COMMERCE CLAUSE

Plaintiffs claim RCW 82.27 discriminates against the Indian interstate commerce clause (U.S. Const. art. 1, § 8), is not fairly apportioned, and does not fairly relate to services provided by the State. The State maintains the holding in *DeWatto* controls and that there is no Indian commerce clause violation. We agree. Parenthetically we note concurrence with the position of the State that plaintiffs have no case under the commerce clause, U.S. Const. art. 1, § 8. We also note plaintiffs' contention that the four criteria which a state tax affecting interstate commerce must meet to be valid (*Department of Rev. v. Association of Wash. Stevedoring Cos.,* 435 U.S. 734, 750, 55 L. Ed. 2d 682, 98 S. Ct. 1388 (1978); *Complete Auto. Transit, Inc. v. Brady,* 430 U.S. 274, 279, 51 L. Ed. 2d 326, 97 S. Ct. 1076 (1977)) also apply to Indian commerce. As we said in *DeWatto,* while state taxes which discriminate against Indian commerce are prohibited, no clear and concise modern test for the validity of taxes affecting Indian commerce has been articulated by the United States Supreme Court. However, even if we were to adopt the interstate commerce clause analysis, plaintiffs' arguments as to the fair apportionment and state services test have no merit and we need not discuss them further. We do, however, consider in some detail whether the tax is discriminatory.

■■ State taxes which discriminate against Indian commerce are invalid. *DeWatto,* at 572. The commerce clause does not bar all state taxation of matters touching the economic interests of Indian tribes, but only prohibits undue discrimination against, or burdens on, Indian commerce. *Washington v. Confederated Tribes,* 447 U.S. 134, 65 L. Ed. 2d 10, 100 S. Ct. 2069 (1980). A tax is not discriminatory so long as parties have the opportunity to allocate the burden among themselves by adjusting the price. *Washington v. United States,* 460 U.S. 536, 541 n.4, 75 L. Ed. 2d 264, 103 S. Ct. 1344 (1983). A shift of the legal incidence of tax from a tax exempt party to a taxable party to assure equal tax is collected is not discriminatory in a constitutional sense. *United States v. County of Fresno,* 429 U.S. 452, 50 L. Ed. 2d 683, 97 S. Ct. 699 (1977).

We have held there is no discrimination so long as overall tax receipts are the same regardless of which parties are involved in the transaction *and* the parties have an opportunity to allocate the tax burden among themselves. *DeWatto,* at 572. We found no discrimination existed under the similar "old food fish tax" scheme because an equal economic burden was placed on *all* fish sales regardless of where or from whom the fish was purchased. *DeWatto,* at 572. This holding is consistent with the present food fish tax scheme. Just because a fish purchaser cannot deduct one–half of the excise tax from a treaty Indian fisherman, any negotiation on the fish price to allocate some of the burden of the tax does not result in discrimination. This is merely the "freedom of the marketplace"; no direct commercial advantage is provided to nontreaty Washington fishermen.

Although some of the tax categories and names have changed with RCW 82.27, the scheme remains the same. A fish purchaser is still free to negotiate the price of the fish with a treaty Indian, and the treaty Indian is capable of

receiving approximately the same amount as taxable non-treaty fishermen.

The analysis used in *DeWatto* is helpful to illustrate the circumstances of the present tax. Assume a fish purchaser buys a salmon from a nontreaty fisherman for $10. The purchaser may deduct from this price one–half of the excise tax of 5 percent, or $0.25, thereby paying the fisherman a net price of $9.75. The fish purchaser owes the State an excise of 5 percent or $0.50, resulting in a total cost for that Chinook of $10.25.

Next, assume the fish purchaser buys an identical fish from a treaty Indian fisherman. Because the purchaser cannot deduct a portion of the excise tax in its purchase from the treaty Indian, the purchaser will pay the full excise tax of $0.50 to the State.

The tax is the same in both instances, and depending on the economic forces operating in the fish market, the purchaser may pass part or all of the tax burden to the non-taxable fisherman. For example, if the fish purchaser wishes to offer $9.75 for the same salmon, the nontaxable fisherman would receive the same net price as the previous taxable fisherman. With the tax remaining approximately the same (always 5 percent for Chinook salmon, RCW 82.27-.020(4)(a)), the total cost for the purchaser, tax included, would equal the amount paid for the fish from the taxable fisherman.

As the court stated in *Department of Fisheries v. De–Watto Fish Co.*, 100 Wn.2d 568, 572, 674 P.2d 659 (1983):

That the identity of the party bearing the legal incidence of the tax shifted to reflect the fact that certain parties were not subject to state taxation is of no practical or constitutional significance since the total tax rate remained equal and the parties had the opportunity to allocate the burden among themselves.

The tax imposed by RCW 82.27.020(1) is constitutional.

The trial court is affirmed.

BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.