FILED
COURT OF APPEALS
DIVISION II

2015 AUG -4 AM 9: 58

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45694-0-II |
| Respondent, | |
| v. | |
| SHAWN ERIC CHRISTOPHER, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Shawn E. Christopher appeals his conviction and sentence for second degree assault, violation of a domestic violence no contact order, and witness tampering. He argues that (1) Substitute House Bill 1188 (SHB), Laws of 2011, chapter 166, section 1, violated the single-subject and subject-in-title requirements of article II, section 19 of the Washington Constitution, (2) the prosecutor committed prosecutorial misconduct, and (3) the trial court erred by failing to consider his current or future ability to pay legal financial obligations (LFOs). In addition, Christopher asserts additional claims in his statement of additional grounds (SAG).

We hold that Christopher (1) does not have standing to challenge the constitutionality of SHB 1188 because he was convicted of second degree assault by *strangulation*, and SHB 1188 addressed only second degree assault by *suffocation*; (2) cannot establish prejudice based on a claim of prosecutorial misconduct; and (3) cannot challenge his LFOs because he waived this issue under RAP 2.5(a) by failing to object at sentencing. We reject Christopher's additional claims in his SAG. We affirm his conviction and sentence.

1

FACTS

On August 22, 2013, Christopher and his girlfriend, Christina Gutierrez, were drinking with friends in their apartment. Christopher accused Gutierrez of staring at their mutual friends, and they started to argue. Christopher put his hands around Gutierrez's neck and choked her for about a minute. When Christopher let her go, Gutierrez called 911. Christopher left the apartment and the police later apprehended him.

The next day, the trial court issued a no contact order against Christopher, which prohibited him from contacting Gutierrez in person or through others. Later that month, Gutierrez received a call from an unfamiliar number. When she called the number back the caller identified himself as a friend of Christopher's from jail, but refused to state his name. The caller read Gutierrez a letter from Christopher, which asked Gutierrez to go to the police and tell them she was lying about Christopher strangling her. The caller told Gutierrez that Christopher was looking at a second strike. A few days later, Gutierrez received texts from the same number asking questions about their "mutual friend." Report of Proceedings (RP) (Nov. 12, 2013) at 166. Following this second exchange, Gutierrez called the police and told them about the communications.

The police later identified Jacinto Hausinger as the caller and text messenger. He and Christopher met when they shared the same jail cell in late August 2013. Hausinger admitted that Christopher asked him to contact Gutierrez and read her the letter. He also admitted to trying to persuade Gutierrez to change her story.

The State charged Christopher with assault in the second degree, violation of a domestic violence no contact order, and tampering with a witness. At trial, Gutierrez testified and identified

a number of pictures taken of her neck following the assault. She identified the red lines of handprints, a hickey, bruising, and Christopher's thumbprint on her neck.

Officer Therman Bibens, who responded to Gutierrez's 911 call, also testified. During his direct testimony, the prosecutor asked Bibens if he knew Christopher. Bibens responded, "I've met [Christopher] before on some previous calls at that same location." RP (Nov. 13, 2013) at 234. Christopher objected to the testimony, which the trial court sustained and ordered the jury to "disregard the last remarks." RP (Nov. 13, 2013) at 234-35.

Christopher then moved for a mistrial on the basis that Bibens' testimony regarding his pre-arrest contacts with Christopher was especially prejudicial to his case. The trial court denied the motion for a mistrial ruling that the "sustaining of the objection and the order for the jury to disregard the comment is sufficient in the circumstance." RP (Nov. 13, 2013) at 238. The trial court later instructed the jury that "[i]f evidence was not admitted or was stricken from the record, then you are not to consider it in reaching your verdict." Clerk's Papers at 53 (quoting Jury Instruction 1). The instruction also stated that if the trial court had "asked you to disregard any evidence, then you must not discuss that evidence during your deliberations or consider it in reaching your verdict." CP at 53-54 (quoting Jury Instruction 1).

The jury found Christopher guilty as charged of second degree assault, violation of a domestic violence no contact order, and witness tampering. The trial court denied Christopher's post-trial motion for arrest of judgment and for new trial. The trial court sentenced Christopher to 26 months, imposed discretionary LFOs totaling $1,409.25, and did not inquire into his current or future ability to pay LFOs. Christopher did not object to the imposition of LFOs. Christopher appeals.

ANALYSIS

Christopher argues that (1) SHB 1188 violated the single-subject and subject-in-title requirements of article II, section 19 of the Washington Constitution, (2) the prosecutor committed prosecutorial misconduct by eliciting impermissible propensity evidence, and (3) the trial court erred by failing to consider his current or future ability to pay LFOs.. In addition, Christopher asserts a number of additional claims in his SAG. We hold that Christopher (1) does not have standing to challenge the constitutionality of SHB 1188 because he was convicted of second degree assault by strangulation, and SHB 1188 addressed only second degree assault by suffocation, (2) cannot establish that the prosecutor's conduct in eliciting testimony was prejudicial, and (3) cannot challenge his LFOs because he waived this issue under RAP 2.5(a) by failing to object at sentencing. We reject Christopher's additional SAG claims. We affirm his conviction and sentence.

A.     Standing

We review whether a party has standing to assert a constitutional violation de novo. *State v. A.W.*, 181 Wn. App. 400, 409, 326 P.3d 737 (2014). Christopher argues that SHB 1188, which amended RCW 9A.36.021, is unconstitutional because it violates the single-subject and subject-in-title requirements of article II, section 19 of the Washington State Constitution.[1] Because SHB

---

[1] Article II, section 19 of the Washington State Constitution provides that: "[n]o bill shall embrace more than one subject, and that shall be expressed in the title." Article II, section 19 established two specific requirements: (1) the single-subject rule and (2) the subject-in-title rule. *State v. Haviland*, 186 Wn. App. 214, 218, 345 P.3d 831 (2015). A violation of either the single-subject or the subject-in-title requirement renders the relevant provisions of the bill unconstitutional. *See id.* at 220.

1188 amended RCW 9A.36.021 to add "suffocation" to the definition of second degree assault,[2] which Christopher was not convicted for, we hold that Christopher lacks standing to make this argument.[3]

To prove standing, Christopher must show (1) "'a personal injury fairly traceable to the challenged conduct and likely to be redressed by the requested relief'" and (2) that his claim falls within the zone of interests protected by the statute or constitution provision at issue. *State v. Johnson*, 179 Wn.2d 534, 552, 315 P.3d 1090 (2014) (quoting *High Tide Seafoods v. State*, 106 Wn.2d 695, 702, 725 P.2d 411 (1986)). If a party lacks standing for a claim, we cannot reach the merits of that claim. *Johnson*, 179 Wn.2d at 552. A defendant may not challenge the constitutionality of a statute unless he or she is harmed by the unconstitutional feature of the challenged statute. *State v. Jendrey*, 46 Wn. App. 379, 384, 730 P.2d 1374 (1986); *State v. Lundquist*, 60 Wn.2d 397, 401, 374 P.2d 246 (1962).

SHB 1188 amended the definition of second degree assault by adding "assault by suffocation" in RCW 9A.36.021(1)(g). LAWS of 2011, ch. 166, § 1. But Christopher was convicted of assault by strangulation under RCW 9A.36.021(1)(g). Therefore, the amendment to SHB 1188 did not affect him and he cannot show harm from the statutory amendments to SHB

---

[2] The other amendments made by SHB 1188 are not implicated by Christopher's case. LAWS of 2011, ch. 166.

[3] The State contends that Christopher may not challenge the constitutionality of SHB 1188 for the first time on appeal because Christopher failed to assert this argument on appeal. Because we hold that Christopher lacks standing to make this argument, we do not address the merits of the State's argument. *See, e.g.*, *State v. Johnson*, 179 Wn.2d 534, 555, 315 P.3d 1090 (declining to reach the merits of a defendant's claim when the defendant lacked standing to raise the claim), *cert. denied*, 135 S. Ct. 139 (2014).

1188. We hold that Christopher lacks standing to challenge the constitutionality of SHB 1188. We decline to address further his constitutional challenge to SHB 1188.

B. "Prior Acts" Statement by Prosecution Witness

Christopher argues that the prosecutor committed misconduct by eliciting testimony that Bibens had been previously dispatched to the defendant's residence for a related offense. Assuming without deciding that the prosecutor did commit misconduct, we hold that Christopher fails to show that Bibens' testimony prejudiced him.

When a defendant objects to alleged prosecutorial misconduct at trial, a defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). Misconduct is prejudicial if there is a substantial likelihood that it affected the jury verdict. *Emery*, 174 Wn.2d at 760.

At trial, the prosecutor asked Bibens if he knew "Shawn Christopher." RP (Nov. 13, 2013) at 234. The officer responded, "I've met [Christopher] before on some previous calls at that same location." RP (Nov. 13, 2013) at 234. Christopher objected, and the trial court sustained his objection. The trial court also told the jury to disregard the officer's statement.

Assuming without deciding that the prosecutor committed misconduct by eliciting this testimony, Christopher fails to show that Bibens' statement had a substantial likelihood of affecting the jury verdict. *See Emery*, 174 Wn.2d at 760. Bibens' testimony would not have led the jury to convict based on alleged propensity evidence because ample evidence established both the second degree assault and witness tampering charges without relying on Bibens' statement. For the assault charge, the State produced Gutierrez's testimony, which was corroborated by her

6

statements to Bibens, her 911 call, and the photographs showing thumb print marks on her neck. For the tampering with a witness charge, the State produced Gutierrez's and Hausinger's testimony, as well as the photographs of Hausinger's text messages to Gutierrez. Thus, even without Bibens' allegedly improper testimony, a reasonable jury had ample evidence to convict Christopher as charged.

Moreover, the trial court informed the jury to disregard Bibens' statement. Before deliberating, the trial court instructed the jury again to disregard any evidence that the court had either not admitted or had stricken. We presume the jury followed these instructions. *See State v. Swan*, 114 Wn.2d 613, 661-62, 790 P.2d 610 (1990). Accordingly, we hold that if any misconduct occurred, Christopher fails to establish that it was so prejudicial that there was a substantial likelihood it affected the verdict.[4]

## C.      LFOs

Christopher argues that the trial court erroneously imposed discretionary LFOs in the amount of $1,409.25 without first determining that he had the current or future ability to pay them. He raises this issue for the time on appeal, as he did not object at sentencing.

---

[4] Christopher argues that the trial court should have granted his motion for a mistrial and post-trial motion for a new trial because the State violated the motion in limine, which prohibited the State from introducing ER 404(b) allegations with regard to Christopher. Aside from the assertion that the trial court should have granted Christopher's mistrial motion and motion for a new trial, Christopher cites no legal authority and offers no legal analysis in support of his contention. We will not consider assignments of error unsupported by citation to authority. RAP 10.3(a)(6), *State v. Bello*, 142 Wn. App. 930, 932 n.3, 176 P.3d 554 (2008). Because Christopher fails to argue this point, Christopher waived this assignment of error and we do not consider it further.

When an appellant fails to raise an issue below, this court may refuse to review it. RAP 2.5(a).[5] A party's objection or argument preserves an issue only if the party actually raises that particular issue before the trial court. *See Cotton v. Kronenberg*, 111 Wn. App. 258, 273, 44 P.3d 878 (2002). In *State v. Blazina*, 182 Wn.2d 827, 832-33, 344 P.3d 680 (2015), our Supreme Court reaffirmed that appellate courts in this state may decline to review the imposition of discretionary LFOs where the defendant failed to object to the imposition of LFOs at sentencing. *Blazina*, 182 Wn.2d at 681. Here, the court sentenced Christopher after our decision in *Blazina*, wherein we declined to review the trial court's imposition of discretionary LFOs because the defendant did not object at sentencing. *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492, *remanded by* 182 Wn.2d 827 (2015). Because Christopher did not object to the trial court's imposition of LFOs at sentencing, we decline Christopher's invitation to review this issue for the first time on appeal.

D.     SAG Claims

In his SAG, Christopher claims prosecutorial misconduct (a) in eliciting four statements during Bibens' testimony, (b) in eliciting second-strike offense evidence during Bibens' testimony, (c) in misrepresenting the evidence during closing argument, (d) in filing of amended charges one month before trial, (e) in withholding a witness and withholding discovery, (f) in coercing a witness, (g) in failing to call an available witness, and (h) in vouching for a witness's credibility.

---

[5] In *State v. Jones*, 182 Wn.2d 1, 6, 338 P.3d 278 (2014), our Supreme Court recognized that unpreserved sentencing errors "may be raised for the first time upon appeal because sentencing can implicate fundamental principles of due process if the sentence is based on information that is false, lacks a minimum indicia of reliability, or is unsupported in the record." (Citation omitted.) But in *State v. Blazina*, 182 Wn.2d 827, 832-33, 344 P.3d 680 (2015), our Supreme Court declined to apply this exception in the context of LFOs. We follow our Supreme Court's lead and decline to apply this exception.

He also claims that the trial court abused its discretion in admitting evidence of photographs and evidence of his ethnicity in the 911 call. We disagree.

1. Prosecutorial Misconduct Claim

a. Bibens' Testimony

Christopher identifies four statements elicited by the prosecutor in Bibens' testimony that he alleges constitute prosecutorial misconduct and are prejudicial: (1) that the neighbor's call about Christopher and Gutierrez's fight "was a 911 call of a – a disturbance, a neighbor had called and basically said my neighbors are arguing again," SAG at 1; (2) that "I start to walk up to the – the building, I had been there two, three times before so I knew where it was," SAG at 1; (3) that he recognized Christopher at the scene and then later in the courtroom, and (4) that Bibens used Christopher's, Gutierrez's, and their roommate's first names. Christopher did not object to any of these four statements at trial.

When a defendant fails to object to prosecutorial misconduct at trial, we apply a different, heightened standard of review. *Emery*, 174 Wn.2d at 760-61. Under this heightened standard of review, the defendant is deemed to have waived any error unless he establishes that the prosecuting attorney's misconduct "was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. This heightened standard of review requires the defendant to show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). We focus "more on whether the resulting prejudice

9

could have been cured," rather than the flagrant of ill intentioned nature of the remark. *Emery*, 174 Wn.2d at 762.

Assuming, without deciding, that the elicitation of this testimony by Bibens was improper, Christopher fails to meet his burden to show prejudice. And if Christopher had objected, which he did not, the court could have instructed the jury to disregard Bibens' testimony, and a limiting instruction could have cured any prejudice. We assume that juries follow the court's instructions. *State v. Weber*, 99 Wn.2d 158, 166, 659 P.2d 1102 (1983). This claim fails.

### b. Second Strike Offense

Christopher claims that the prosecutor violated the trial court's ruling precluding Gutierrez from testifying to the significance of Christopher getting a second strike offense.[6]

The trial court stated,

> And here, as I understand it, the reference is that [Hausinger] said, "He's in trouble. He has a second strike, and therefore, he needs you to do things." So, if that's what [Gutierrez] testifie[d] he said, that's what he said. I'm not going to exclude it. She can't go on to explain what she thought that he meant by that, or what she knew in terms of his past record and all that sort of thing, but she can testify as to what he said.

RP (Nov. 12, 2013) at 56. The trial court ruled that Gutierrez could testify as to what Hausinger told her, but that she could not explain the significance of Christopher getting a second strike if convicted of violating the domestic violence no contact order.

Christopher points to the following exchange as evidence that the prosecutor violated the trial court's ruling.

---

[6] The charge of second degree assault against Christopher would be a "second strike" offense under the persistent offender accountability act, RCW 9.94A.555, .010, .030(32)(b).

10

[State]:       What did [Hausinger] tell you?
[Gutierrez]:   That [Christopher] loves me and wants to be with me.
[State]:       Did the caller tell you anything else about the Defendant?
[Gutierrez]:   That he's looking at a second strike.
[State]:       What's – what does that mean?
[Gutierrez]:   That –
[State]:       Or, why did the caller tell you that? Strike that. Why did the caller – what was the significance of that?
[Gutierrez]:   To me, it meant something bad.

RP (Nov. 12, 2013) at 159. Christopher did not object to the prosecutor's questioning.

The prosecutor expressly asked Gutierrez about the significance of Christopher getting a second strike offense. The prosecutor's question to Gutierrez violated the trial court's ruling and was misconduct. However, because Christopher did not object to this testimony at trial, he waived this issue unless he can establish that the prosecutor's misconduct was so flagrant and ill intentioned that it caused an enduring prejudice that could not have been cured with an instruction to the jury and the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. *Emery*, 174 Wn.2d at 761.

Bibens did not actually explain the significance of Christopher getting a second strike. There is no evidence that the prosecutor's questioning was so prejudicial that it could not be cured by a limiting instruction, which was not requested. Moreover, in light of the evidence presented, there is no showing that this misconduct had a substantial likelihood of affecting the jury's verdict. Christopher failed to meet his burden. This claim fails.

c. Closing Argument

Christopher claims that the prosecutor misrepresented evidence during closing argument by telling the jury (1) that Christopher had been drinking malt liquor the night of the assault and (2) that Christopher and Gutierrez had been dating for five years. Christopher must demonstrate

11

that these statements resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. *Emery*, 174 Wn.2d at 760. He fails to show any prejudice.

Gutierrez testified that on the night of the incident she and Christopher were drinking "juice and, like and actual alcoholic beverage[s], and there was also Bud Light." RP (Nov. 12, 2013) at 110. She went on to explain that the "juice" came in a tall can and was "like malt liquor." RP (Nov. 12, 2013) at 111. During the State's closing argument, the prosecutor indicated that the case was "about a Defendant who was intoxicated that night, been drinking beer, some malt liquor." RP (Nov. 13, 2013) at 385. The prosecutor presented evidence that Christopher was drinking beer and another beverage like a malt liquor. The inference that the jury would have taken from these facts was that Christopher was intoxicated. The jury would have made the same inference had the prosecutor clarified his statement and stated that the beverage was *like* a malt liquor. Christopher fails to demonstrate that the malt liquor statement in closing argument had a substantial likelihood of affecting the jury's verdict.

The prosecutor also indicated in closing argument that Gutierrez had "to overcome the emotional ties of a five-year relationship that she thought was love at first sight." RP (Nov. 13, 2013) at 387. Both Gutierrez and Christopher testified to knowing each other or dating for only six months before the assault. The prosecutor's comment about the parties' five-year relationship would not have negated the other ample evidence produced establishing Christopher's guilt on the charges of second degree assault, violation of a domestic violence no contact order, and witness tampering. Christopher fails to demonstrate that the reference to the five-year relationship in closing argument had a substantial likelihood of affecting the jury's verdict. This claim fails.

### d. Filing Amended Charges

Christopher claims that the State erred by waiting "until the last moment" to add the charges of violation of a domestic violence order and tampering with a witness. SAG at 8. We disagree.

The Washington Supreme Court has held that where prosecutorial misconduct results in prejudice to the defendant, dismissal is required pursuant to CrR 8.3(b). *State v. Michielli*, 132 Wn.2d 229, 240-43, 937 P.2d 587 (1997). In *Michielli*, the prosecutor inexplicably decided to file four additional charges five days before trial, thereby forcing the defendant to waive his speedy trial rights in order to prepare a defense to the new charges. *Michielli*, 132 Wn.2d at 243-44. The State admitted it possessed all the information necessary to file all of the charges when it filed the initial information, and it did not obtain more discovery or add witnesses for trial. *Michielli*, 132 Wn.2d at 244. The court noted that the only reasonable explanation for the prosecutor's delay appeared to be harassment of the defendant and the court termed the delay as "governmental mismanagement." *Michielli*, 132 Wn.2d at 243. Further, the court held that the defendant was prejudiced when the prosecutor delayed adding four serious charges until just days before trial, thereby giving the defendant the choice of going to trial unprepared or waiving his right to a speedy trial and asking for a continuance. *Michielli*, 132 Wn.2d at 244.

Here, unlike in *Michielli*, the prosecutor did not possess the information to support the State's additional charges at the time it filed the initial information against Christopher. Gutierrez notified the police that Christopher had contacted her through Hausinger from jail and attempted to get her to alter her testimony in late September 2013—at least three weeks after the State filed its initial information against Christopher. Conflicting testimony exists as to whether the

prosecutor actually became aware of the facts underlying the State's amended information in late September or early to mid October. Christopher's defense counsel asserted that the prosecutor learned of these facts on or around September 27, 2013, but did not provide the defense with notice of its intent to amend the information until October 15, 2013. However, the prosecutor told the trial court that he did not receive the information supporting the charges of violating a domestic violence no contact order and tampering with a witness until "towards the end of October." RP (Nov. 7, 2013) at 4. It is Christopher's burden to show the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. *Emery*, 174 Wn.2d at 760. Based on this record, we hold that Christopher fails to show prosecutorial misconduct.

Moreover, even assuming misconduct, which we do not find, Christopher fails to show prejudice. There is no evidence in the record that the prosecutor's act of filing to amend charges on October 17, 2013 placed Christopher in the untenable situation of going to trial unprepared or waiving his speedy trial right and asking for a continuance. *See Michielli*, 132 Wn.2d at 244. The State filed its original information on August 26, 2013, charging Christopher with second degree assault. On October 17, 2013, the State moved to amend the information to add count 2, charging Christopher with a violation of a domestic violence protection order and count 3, charging Christopher with tampering with a witness. Christopher objected. Christopher's trial began on November 12, 2013. Therefore, Christopher had exactly four weeks from October 15, 2013 to November 12, 2013 to prepare a defense to the amended charges. The record does not show that Christopher was prejudiced in preparing a defense.

14

e. Withholding Exculpatory Evidence

Christopher claims that the State committed a *Brady*[7] violation by withholding exculpatory evidence by not showing the jury a police car video recording that showed him asking for pictures of Gutierrez's injuries, which would have impeached Bibens' and Gutierrez's testimony. We disagree.

The State has a duty to disclose material evidence favorable to the defendant. *See Brady*, 373 U.S. at 87. *Brady* states that the suppression of evidence favorable to an accused violates due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith" of the State. *Brady*, 373 U.S. at 87. The State has a duty to learn of any favorable evidence "known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).

The evidence that Christopher claims the State withheld from him, however, is not included or referenced in the record on review. On direct appeal, we do not consider matters outside the record. *State v. McFarland*, 127 Wn.2d 322, 338 n.5, 899 P.2d 1251 (1995). We do not consider this issue further.

f. Withholding a Witness/Discovery

Christopher claims the State did not allow his defense counsel to interview Hausinger until the day of trial. But there is no evidence in the record that the State prevented Christopher's defense counsel from interviewing Hausinger. Christopher's claim relies on evidence outside of

---

[7] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

the record. On direct appeal, we do not consider matters outside the record. *McFarland*, 127 Wn.2d at 338 n.5. We do not consider this claim further.

Christopher also claims that the State failed to provide Officer Skeeter's[8] initial report to his defense counsel for three weeks. The only reference to this report in the record is Christopher's counsel's argument before the trial court that the prosecution had this report as of September 27, but failed to provide it to her until October 15. However, Christopher fails to demonstrate how the State's delay in providing Skeeter's report resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. *Emery*, 174 Wn.2d at 760. He had the opportunity to admit the report at trial and make any admissible arguments beneficial to his position. Therefore, this claim fails.

### g. Coercing Hausinger

Christopher claims that the State coerced Hausinger into testifying against Christopher by threatening him with charges for tampering with a witness and gave Hausinger improper preferential treatment to testify against him. But the record contains no evidence to support Christopher's claim of coercion or that the State gave Hausinger preferential treatment for testifying. *McFarland*, 127 Wn.2d at 338 n.5. We do not consider this claim further.

### h. Failure to Call Available Witness

Christopher claims that the State's failure to call Skeeter, when she was an available witness, was a deliberate ploy to hide exculpatory evidence and constitutes prosecutorial misconduct. But there is no information in the record that Skeeter was an available witness. Under

---

[8] Officer Skeeter's first name is not contained in the record on appeal.

RAP 10.3(a)(5), Christopher must cite to the record for every factual statement he presents for review. Without such citation and evidence in the record supporting Christopher's contention, we do not consider this issue further. *McFarland*, 127 Wn.2d at 338 n.5.

### i. Vouching for a Witness's Credibility

Christopher claims that the prosecutor impermissibly vouched for Hausinger's credibility as a witness during closing argument. We agree that the prosecutor vouched for Hausinger's credibility, but we hold that Christopher waived this claim by failing to show that an admonition to the jury, which he failed to request, would not have cured the error.

A prosecutor commits improper vouching by expressing a personal opinion as to a witness's veracity. *Thorgerson*, 172 Wn.2d at 443. Whether a witness testifies truthfully is an issue entirely within the province of the trier of fact. *Thorgerson*, 172 Wn.2d at 443. But a prosecutor's wide latitude to argue inferences from the evidence includes arguing inferences regarding witness credibility. *Thorgerson*, 172 Wn.2d at 448. In addition, the "'failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'" *Thorgerson*, 172 Wn.2d at 443 (quoting *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

Christopher cites to the following section of the prosecutor's closing argument discussing Hausinger's demeanor while testifying:

> Now, the Defendant got up on the stand today and he denied that he told Jacinto Hausinger to do that, but you saw Mr. Hausinger. The last thing Mr. Hausinger wanted to do today was stand up on this stand and testify. He didn't want to admit that the Defendant told him to contact Ms. Gutierrez. That was like pulling teeth out of him, but he did because he was under oath and *he was telling*

*the truth.* Now he could have also changed his story, he could have denied it. . . . But he finally came clean and said, "Yes."

RP (Nov. 14, 2013) at 393-94 (emphasis added). During rebuttal, the prosecutor told the jury, "Mr. Hausinger, you can make your own decisions on his credibility and what he got up here and – and said today." RP (Nov. 14, 2013) at 418.

In *State v. Jackson*, 150 Wn. App. 877, 883-84, 209 P.3d 553 (2009), one of the key issues was whether to believe the police officers or a defense witness. During closing arguments, the prosecutor stated twice that the police testified accurately. *Jackson*, 150 Wn. App. at 884. We held that the prosecutor did not vouch for the officers' credibility because, looking at the argument in context, the prosecutor reminded the jury that it was the sole judge of credibility and then outlined the evidence, which could support the jury's conclusion that the officers were credible. *Jackson*, 150 Wn. App. at 884-85.

Here, one of the key trial issues was whether to believe Hausinger or Christopher regarding whether Christopher directed Hausinger to call Gutierrez to persuade her to change her story. During closing argument, the prosecutor expressly told the jury that Hausinger "was under oath and *he was telling the truth.*" RP (Nov. 14, 2013) at 393-94 (emphasis added). In this context, the prosecutor engaged in impermissible vouching because it directly commented on Hausinger's veracity. These statements constitute prosecutorial misconduct.

But because Christopher did not object to the prosecutor's statements, he waived any error. He has not shown that any misconduct was so flagrant and ill intentioned that it "cause[d] an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *Thorgerson*, 172 Wn.2d at 443. Here, an admonition to the jury to disregard the

18

prosecutor's argument would have likely neutralized any prejudice arising from the prosecutor's misconduct. This claim fails.

    2.    Photographic Evidence

Christopher claims that the trial court's admission of photos taken by Gutierrez's roommate was improper because Gutierrez was not a credible source for the pictures and they could have been altered. We disagree.

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Diaz v. State*, 175 Wn.2d 457, 462, 285 P.3d 873 (2012). A trial court abuses its direction when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The proponent of photographic evidence must authenticate the photographs before the trial court may admit it. ER 901(a). To do so, the proponent must introduce "'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *State v. Bradford*, 175 Wn. App. 912, 928, 308 P.3d 736 (2013) (quoting ER 901(a)), *review denied*, 179 Wn.2d 1010 (2014).

At trial, Gutierrez testified that she and Christopher's roommate, Amos Carpenter, took the three photographs of Gutierrez's neck two to three days after the assault. Gutierrez identified the three photographs and testified that the photographs were an accurate depiction of what her neck looked like. Gutierrez's testimony was sufficient to demonstrate that the photographs were actual photographs taken of her neck and were properly authenticated as required under ER 901(a).

3.    Christopher's Ethnicity

Christopher also claims that the State should have edited Gutierrez's 911 call in which she identifies him as a Native American, so that the jury was not informed that he was a Native American. He claims that segments of the population believe Native Americans become violent when drinking liquor. But he did not object based on his ethnicity; Christopher objected only to admitting the 911 call as an excited utterance or a present sense impression under ER 803(a)(2). Because Christopher did not object to the testimony that he now complains of on appeal and does not assert that the alleged error was a "manifest error affecting a constitutional right," we decline to address this issue further under RAP 2.5(a).

## CONCLUSION

We hold that Christopher (1) does not have standing to challenge the constitutionality of SHB 1188 because he was convicted of second degree assault by *strangulation*, and SHB 1188 addressed only second degree assault by *suffocation*; (2) cannot establish a claim of prosecutorial misconduct or prejudice from any claimed misconduct; and (3) waived his challenge to the trial court's imposition of LFOs under RAP 2.5(a). We reject Christopher's additional SAG claims.

No. 45694-0-II

We affirm Christopher's conviction and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

I concur:

LEE, J.

No. 45694-0-II

BJORGEN, J. (concurring) — For the reasons set out in my dissent in *State v. Lyle*, ___ P.3d ___, No. 46101-3-II, 2015 WL 4156773 (Wash. Ct. App. July 10, 2015), I would reach Shawn Christopher's legal financial obligations' challenge, even though he did not raise it during sentencing. However, the majority in *Lyle*, a published decision, reached a contrary conclusion. *Lyle*, ___ P.3d ___, No. 46101-3-II, 2015 WL 4156773 (Wash. Ct. App. July 10, 2015). Unless *Lyle* is overturned or its bases questioned by subsequent case law, I shall observe its result under principles of stare decisis. Therefore, I concur in this decision with the reservation here expressed.

BJORGEN, J.

22