# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ARTHUR WEST,<br><br>　　　　　Appellant,<br><br>　　v.<br><br>SEATTLE PORT COMMISSION,<br>TACOMA PORT COMMISSION,<br>PORT OF TACOMA, PORT OF<br>SEATTLE, CLARE PETRICH, DON<br>JOHNSON, RICHARD MARZANO,<br>DON MEYER, CONNIE BACON, TOM<br>ABRO, STEPHANIE BOWMAN, BILL<br>BRYANT, JOHN CREIGHTON,<br>COURTNEY GREGOIRE,<br><br>　　　　　Respondents. | No. 73014-2-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br>FILED: July 5, 2016 |

TRICKEY, J. — Arthur West sued the Port of Tacoma and the Port of Seattle for violating the Open Public Meetings Act of 1971 (OPMA), chapter 42.30 RCW. The Ports moved for dismissal for failure to state a claim. The Port of Tacoma claimed West lacked standing to bring his OPMA claim. The Port of Seattle argued that the Federal Shipping Act of 1984, 46 U.S.C. §§ 40101-41309, preempted this application of the OPMA. The trial court granted both motions.

Because the OPMA authorizes any person to file an action, we hold that the trial court erred when it concluded that West lacked standing. But, because we hold that complying with the OPMA would frustrate the purposes of the Shipping Act in this case, we affirm the dismissal of West's claims.

## FACTS

The Commissioners of the Port of Tacoma and Port of Seattle conducted a series of confidential meetings between May and September 2014. West became aware of the

meetings in September 2014 and sought to attend one. The Ports explained that the Federal Shipping Act authorized their meetings and allowed them to keep the meetings confidential. Therefore, they claimed, the meetings were not subject to the OPMA. West was not allowed to attend any of the meetings.

West filed suit against both Ports and several individual commissioners on September 26, 2014. He sought a declaratory judgment and sanctions under the OPMA.

The Ports moved to dismiss West's complaint for failure to state a claim because he lacked standing and federal law preempted the OPMA for this type of meeting. The trial court granted both motions to dismiss with prejudice. West appeals the dismissal of his OPMA claims.

ANALYSIS

Motions to Dismiss

West argues that the trial court erred when it dismissed his OPMA claims for "failure to state a claim upon which relief can be granted." CR 12(b)(6). When deciding whether to dismiss under this standard, the court assumes all the plaintiff's factual allegations are true and "may consider hypothetical facts supporting the plaintiff's claims." Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 206 (2007). Dismissal is appropriate only where "it appears beyond doubt that the plaintiff cannot prove any set of facts which would justify recovery." Tenore v. AT&T Wireless Servs., 136 Wn.2d 322, 330, 962 P.2d 104 (1998).

We review dismissal under CR 12(b)(6) de novo as a question of law. Tenore, 136 Wn.2d at 329-30. We also review questions of standing, statutory interpretation, and preemption de novo. Trinity Universal Ins. Co. of Kansas v. Ohio Cas. Ins. Co., 176 Wn.

2

App. 185, 199, 312 P.3d 976 (2013), review denied, 179 Wn.2d 1010, 316 P.3d 494 (2014) (standing); State v. Mitchell, 169 Wn.2d 437, 442, 237 P.3d 282 (2010) (statutory interpretation); Veit, ex rel. Nelson v. Burlington N. Santa Fe Corp., 171 Wn.2d 88, 99, 249 P.3d 607 (2011) (preemption).

The trial court granted the Port of Tacoma's motion to dismiss on the grounds that West lacked standing under the OPMA to bring his claims. It also granted the Port of Seattle's separate motion to dismiss West's claims under CR 12(b)(6) because the Shipping Act preempted the OPMA in these circumstances.

## Standing

The threshold question in this case is whether West has standing under the OPMA to bring this claim against the Ports. The trial court held that he did not. We agree with West that this was error.

"The claims of a plaintiff who lacks standing cannot be resolved on the merits and must fail." Trinity Universal Ins., 176 Wn. App. at 199. Questions of standing under Washington law begin with the statutes themselves. See, e.g., Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wn.2d 791, 802, 83 P.3d 419 (2004) (looking first to the language of the Uniform Declaratory Judgments Act, chapter 7.24 RCW, to determine whether a party had standing).

Courts give effect to the plain meaning of unambiguous statutes. West v. Wash. Ass'n of Cty. Officials, 162 Wn. App. 120, 130, 252 P.3d 406 (2011). Courts may look at the provision of a statute in context to determine its plain meaning. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 10, 43 P.3d 4 (2002).

Here, West seeks to bring suit under the OPMA. The act requires that "[a]ll

meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency." RCW 42.30.030.

The standing requirements in the OPMA are very broad: "Any person may commence an action either by mandamus or injunction for the purpose of stopping violations or preventing threatened violations of this chapter by members of a governing body." RCW 42.30.130. And "[a]ny person" may bring an action to enforce civil penalties against members of a governing body who attend meetings in violation of the OPMA. RCW 42.30.120.

The statute does not define "person" or limit the people eligible to bring claims under the act. RCW 42.30.130. It does not indicate that a person seeking standing must show a particular injury or satisfy a rigorous standing test. A permissive standing requirement is in line with the legislature's declaration that "the people . . . do not yield their sovereignty" and "insist on remaining informed" and the OPMA's instruction to construe the statute liberally. RCW 42.30.010, .910.

Few published cases have addressed the OPMA's standing requirements. In Lopp v. Peninsula School District No. 401, the Washington State Supreme Court concluded that RCW 42.30.130 "allows anyone standing to challenge the validity of a governing body's action." 90 Wn.2d 754, 757, 585 P.2d 801 (1978). But the court later determined that a plaintiff did not have "standing to raise the matter of improper notice" to a specific member of a governing body. Kirk v. Pierce Cty. Fire Prot. Dist. No. 21, 95 Wn.2d 769, 772, 630 P.2d 930 (1981).

In Kirk, a board of fire commissioners terminated the fire chief through a special

4

meeting.[1] 95 Wn.2d at 770-71. The board, allegedly, did not properly notify one of the commissioners of the meeting. Kirk, 95 Wn.2d at 772. The terminated fire chief sought to invalidate the action taken at the meeting, on the grounds that the failure to notify one of the commissioners violated the OPMA. Kirk, 95 Wn.2d at 771-72. The court ruled that only the aggrieved commissioner, who did not receive proper notice, would have had standing to raise the issue. Kirk, 95 Wn.2d at 772.

The different results in Kirk and Lopp may be due to the different relief they sought. The plaintiff in Lopp sought to enjoin a school district from selling bonds and to fine the individual board members of the school district. 90 Wn.2d at 755. Both actions are contemplated in RCW 42.30.120 and .130. The fire chief in Kirk sought to invalidate action taken at an earlier meeting. 95 Wn.2d at 771. Although the OPMA declares that "[a]ny action taken at meetings failing to comply with [chapter 42.30 RCW] shall be null and void" it does not authorize individual people to annul or invalidate those actions. RCW 42.30.060(1).

Additionally, Kirk is distinguishable on its facts. There, the OPMA violation at issue was improper notice to a specific person. Kirk, 95 Wn.2d at 771. There was no claim that anyone, including the fire chief, was prohibited from attending the meeting. By contrast, West claims he was personally denied access to the Ports' meetings.

Accordingly, Kirk did not establish more stringent requirements for standing under RCW 42.30.120 or .130 than those suggested by the statute's plain language. This conclusion is consistent with cases following Kirk that have allowed OPMA actions to proceed without analyzing standing. See, e.g., West, 162 Wn. App. at 127; Eugster v.

---

[1] Special meetings have different notice requirements than regularly scheduled meetings. Cf. RCW 42.30.075, .080

City of Spokane, 128 Wn. App. 1, 7, 114 P.3d 1200 (2005). Therefore, West, a person, has standing to bring actions under the OPMA.

The Ports also claim that Washington draws its standing requirements from federal law, citing High Tide Seafoods v. State, 106 Wn.2d 695, 702, 725 P.2d 411 (1986). While the court followed federal authority in High Tide Seafoods, the plaintiffs there sought to invalidate Washington's tax code on the basis of federal authority: the United States Constitution and treaty rights of Indians. 106 Wn.2d at 701-02. Therefore, the court was addressing standing under federal law, not Washington law. High Tide Seafoods, 106 Wn.2d at 701-02. There was no assertion in that case that Washington's standing doctrine is always parallel to its federal counterpart.

The Ports rely heavily on Lujan v. Defenders of Wildlife and other federal cases to support their argument that West does not have standing because he cannot demonstrate any injury. 504 U.S. 555, 577, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).[2] This line of cases does not automatically apply to Washington courts interpreting Washington law.

The Court held in Lujan that Congress, although able to establish new categories of cognizable injuries, did not have the authority to confer standing by statute on plaintiffs who had suffered no injury. 504 U.S. at 577-78. The Court held that the plaintiff must allege a concrete injury in order to satisfy the "case-or-controversy requirement" of article III, from which federal courts receive their authority to adjudicate cases. Lujan, 504 U.S. at 560, 577; U.S. CONST. art. III, § 2, cl. 1.

State courts are not bound by this requirement because they do not rely on the

---

[2] Those cases include Allen v. Wright, 468 U.S. 737, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984); Craig v. Boren, 429 U.S. 190, 193-94, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976); Fairchild v. Hughes, 258 U.S. 126, 129-30, 42 S. Ct. 274, 66 L. Ed. 499 (1922).

federal constitution for their authority. "In federal courts, a plaintiff's lack of standing deprives the court of subject matter jurisdiction, making it impossible to enter a judgment on the merits." Trinity Universal, 176 Wn. App. at 198-99 (citing Fleck & Assocs., Inc. v. City of Phoenix, 471 F.3d 1100, 1102 (9th Cir. 2006)). "By contrast, the Washington Constitution places few constraints on superior court jurisdiction." Trinity Universal, 176 Wn. App. at 198; see WASH. CONST. art. IV, § 6. The Ports do not suggest that standing is a constitutional issue in Washington.

In short, the Ports have not shown that West lacks standing under the OPMA. Because West has not appealed the dismissal of his claim under the Uniform Declaratory Judgments Act, chapter 7.24 RCW, we do not address the Ports' argument that West lacks standing to bring a claim under that statute.[3]

Concluding that West does have standing, we proceed to the merits of the Ports' preemption argument.

### Federal Conflict Preemption

West argues that the trial court erred when it determined that the Shipping Act preempted the OPMA for these meetings between the Ports. He asserts that the Shipping Act is irrelevant because there is no maritime component to this case. The Ports argue that federal law preempts this application of the OPMA because the Shipping Act preempted state regulation in this field, and because the OPMA and Shipping Act conflict.

---

[3] West argues in his reply brief that the Port of Tacoma is judicially estopped from asserting a standing argument here because, in another case, the Port of Tacoma used the trial court's order to argue that federal law preempts the operation of Washington's Sunshine laws. This argument refers to material outside the record on appeal. We do not consider it. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

We hold that the Shipping Act preempts this application of the OPMA because complying with the OPMA would frustrate the goals and purposes of the Shipping Act.

Federal law preempts state law when state law operates in a field that is completely occupied by federal law or when state law conflicts with federal law. Inlandboatmen's Union of the Pac. v. Dep't of Transp., 119 Wn.2d 697, 700-01, 836 P.2d 823 (1992); U.S. CONST. art. VI, cl. 2. Congressional intent guides federal preemption analysis. Inlandboatmen, 119 Wn.2d at 701. There is a presumption against preemption when the state acts within the scope of its historic police powers.[4] Wyeth v. Levine, 555 U.S. 555, 565, 129 S. Ct. 1187, 173 L. Ed. 2d 51 (2009).

Conflict preemption exists when it is impossible to comply with federal and state law, or when "a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Inlandboatmen, 119 Wn.2d at 702. Compliance is impossible when a federal law forbids an action that state law requires. Mutual Pharm. Co., Inc. v. Bartlett, __ U.S. __, 133 S. Ct. 2466, 2476, 186 L. Ed. 2d 607 (2013).

Here, the two potentially competing laws are Washington's OPMA, described above, and the Federal Shipping Act of 1984. The Shipping Act regulates ocean shipping. It allows certain marine actors, including ports, to work cooperatively, including in ways that might otherwise run afoul of antitrust legislation. 46 U.S.C. §§ 40301–07. Regulations implementing the statute require that the parties take detailed minutes for any meetings they hold under the act and submit those minutes to the Federal Maritime

---

[4] The Court held there was no presumption against preemption in U.S. v. Locke, but both the federal and state laws in that case were clearly in the field of maritime safety and commerce. 529 U.S. 89, 108, 120 S. Ct. 1135, 146 L. Ed. 2d 69 (2000).

Commission (FMC). 46 C.F.R. §§ 535.701(b), .704(a). The statute exempts those minutes from disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552:

> Information and documents (other than an agreement) filed with the Federal Maritime Commission under this chapter are exempt from disclosure under [FOIA] and may not be made public except as may be relevant to an administrative or judicial proceeding.

46 U.S.C. § 40306; see also 46 C.F.R. § 535.701(i).

The Ports argue that allowing the public to attend their meetings would conflict directly with that nondisclosure requirement. West counters that Congress's decision to exempt written records from disclosure under FOIA does not require the agencies to make the meetings themselves closed to the public. We agree with West. It would be possible for the Ports to have their meetings open to the public and then file the minutes confidentially with the FMC. There is no impossibility preemption here.

But the Shipping Act could still conflict with the OPMA if complying with the OPMA would frustrate Congress's purposes and objectives. To determine whether state law presents an obstacle to federal objectives, courts must examine "the federal statute as a whole and [identify] its purpose and intended effects." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000). Because the presumption against preemption applies, state law "'must do major damage to clear and substantial federal interests before the Supremacy Clause will demand that state law will be overridden.'" Hillman v. Maretta, __ U.S. __, 133 S. Ct. 1943, 1950, 186 L. Ed. 2d 43 (2013) (internal quotation marks omitted) (quoting Hisquierdo v. Hisquierdo, 439 U.S. 572, 581, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979)).

The purposes of the Shipping Act include developing "competitive and efficient ocean transportation" and establishing "a nondiscriminatory regulatory process" for

international maritime commerce "with a minimum of government intervention and regulatory costs." 46 U.S.C. § 40101(1), (4). To further these purposes, the Shipping Act allows the Ports to "discuss, fix, or regulate rates or other conditions of service" and "engage in exclusive, preferential, or cooperative working arrangements." 46 U.S.C. § 40301(b)(1), (2).

Allowing the public, including possible competitors, access to the Ports' meetings on these matters would make it far more difficult for the Ports to develop competitive approaches. As the Ports argue, open meetings here would "give the Ports' competitors access to their strategies and would place the Ports at a competitive disadvantage vis-à-vis marine terminal operators (both here and abroad) who were not subject to similar open public meetings acts."[5] Congress's decision to exempt the records filed with the FMC from disclosure requests under FOIA, is consistent with the Ports' argument.

Similarly, Washington has recognized that, in certain circumstances, having open meetings may be incompatible with competitive activity. There are several exceptions to the OPMA that allow the governing body to hold an "executive session," without the public's scrutiny. RCW 42.30.110(1). Three of the exceptions are for instances when "public knowledge" of the meeting's contents "would cause a likelihood of increased costs" or decreased income to the governing body. RCW 42.30.110(1)(b), (c), (d).[6]

Requiring the Ports to open their meetings to the public would frustrate Congress's intent to have American marine terminal operators be competitive in international maritime commerce. We hold that the Shipping Act preempts this application of the OPMA, because the OPMA would do major damage to the Shipping Act's objectives.

---

[5] Answering Br. of Defs./Resp'ts at 28.
[6] Neither party has argued that the Ports' meetings fall within these exceptions.

Because there is conflict preemption, we do not address whether there would also be field preemption.

<u>Continuance</u>

West argues that the trial court erred by denying his motion for a continuance. We conclude that the trial court did not abuse its discretion by failing to grant West a continuance.

West requested a continuance under CR 56(f), the rule for summary judgment, even though the Ports moved to dismiss for failure to state a claim under CR 12(b)(6). But, assuming that the trial court converted the motions to dismiss into summary judgment motions when it considered the discussion agreements, the trial court did not abuse its discretion by denying West's request for a continuance.

When a party moves for summary judgment, the opposing party may request a continuance if it needs additional time to obtain affidavits that will justify its opposition to summary judgment. CR 56(f). But the court "may deny a motion for a continuance when (1) the moving party does not offer a good reason for the delay in obtaining the evidence; (2) the moving party does not state what evidence would be established through the additional discovery; or (3) the evidence sought will not raise a genuine issue of fact." <u>Coggle v. Snow</u>, 56 Wn. App. 499, 507, 784 P.2d 554 (1990).

This court reviews a trial court's decision to deny a continuance for an abuse of discretion. <u>Coggle</u>, 56 Wn. App. at 504. It is an abuse of discretion if the court bases its decision on untenable grounds or for untenable reasons. <u>Coggle</u>, 56 Wn. App. at 507.

West did not file a separate motion for a continuance but requested one in the conclusion of his response to the Ports' motions to dismiss. He did not support his one-

sentence request with affidavits or specify exactly what evidence he could obtain through additional discovery. Additionally, this case revolves around a pure question of law. No evidence could help West raise a genuine issue of material fact. Denying West's request was within the trial court's discretion.

## Attorney Fees

The Port of Tacoma requests attorney fees on the grounds that West's appeal is frivolous. See RAP 18.9(a). "An appeal is not frivolous or brought for purposes of delay if it involves 'debatable issues upon which reasonable minds might differ.'" O'Neill v. City of Shoreline, 183 Wn. App. 15, 26, 332 P.3d 1099 (2014) (internal quotation marks omitted) (quoting Olsen Media v. Energy Scis., Inc., 32 Wn. App. 579, 588, 648 P.2d 493 (1982)).

The Port of Tacoma's entire argument that West's appeal is frivolous relates to standing. West prevailed on the issue of standing. His appeal of that issue was not frivolous.

Affirmed.

Trickey, ACJ

WE CONCUR:

Spearman, J.

Leach, J.

12