# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DAVID TRAHAN, a Washington resident, | DIVISION ONE |
| Plaintiff, | No. 84104-1-I |
| v. | UNPUBLISHED OPINION |
| MERCHANTS CREDIT CORPORATION a/k/a MERCHANTS CREDIT ASSOCIATION, a Washington corporation and licensed collection agency, | |
| Defendant. | |
| MERCHANTS CREDIT CORPORATION a/k/a MERCHANTS CREDIT ASSOCIATION, a Washington corporation and licensed collection agency, | |
| Appellant, | |
| v. | |
| LITIGATION PRACTICE GROUP PC, a foreign professional service corporation; and PETER SCHNEIDER, an individual, | |
| Respondents. | |

DWYER, J. — Litigation Practice Group (LPG) filed a lawsuit against

Merchants Credit Corporation (Merchants), a debt collection agency, on behalf of

David Trahan. Merchants thereafter filed third party claims against LPG for

alleged violations of the Consumer Protection Act[1] (CPA) and the federal Credit Repair Organizations Act[2] (CROA) premised on its assertion that LPG lacked the authority to commence a lawsuit on Trahan's behalf.  Subsequently, on a motion for summary judgment filed by LPG, the trial court entered an order dismissing Merchants' claims as frivolous and filed in bad faith and awarded LPG its attorney fees and costs pursuant to RCW 4.84.185.  Merchants appeals the entry of the orders granting summary judgment and attorney fees to LPG.  Holding that the trial court did not err by ruling Merchants' claims as frivolous, we affirm.

I

Trahan entered into a legal services agreement with LPG in December 2020.  The agreement states that LPG will "investigate [Trahan's] delinquent accounts . . . up to and including the initiation of lawsuits on [his] behalf against [his] creditors and their third-party debt collectors."[3]  In May 2021, Trahan signed a power of attorney, which permitted LPG to (1) contact his creditors regarding past due accounts, (2) share personal information with his creditors, and (3) offer settlement terms to resolve past due accounts on his behalf.  The power of attorney included a provision stating that "[t]he duties performed by [LPG] will be limited in scope to the above-mentioned actions."

On June 11, 2021, an order of default and default judgment was entered against Trahan in the superior court.  Merchants thereafter attempted to collect on the judgment.  On October 11, 2021, LPG provided Merchants with the power

---

[1] Ch. 19.86 RCW.
[2] 15 U.S.C. §§ 1679-1679j.
[3] The copy of the legal services agreement contained in our record, which LPG provided to Merchants following the filing of Merchants' third party complaint, is heavily redacted.

of attorney signed by Trahan, authorizing LPG to obtain documentation to evaluate Trahan's potential claims. LPG then served Merchants with a summons and complaint, which alleged that Merchants had attempted to collect from Trahan an amount of interest exceeding that permitted by the judgment, resulting in violations of state and federal collection agency laws and the CPA.[4]

Merchants responded by offering to settle the claims. Referencing the limitations set forth in the power of attorney, Merchants additionally requested that LPG provide "a retention agreement reflecting that [LPG] had authorization [from Trahan] to commence a lawsuit" in the matter.[5]

When settlement failed, Merchants filed a third party complaint wherein it alleged that LPG had violated the CPA and the CROA by commencing the lawsuit on Trahan's behalf without his authorization. Merchants thereafter offered to consider dismissing its third party claims against LPG on the condition that LPG provide Merchants with evidence that it had authority to commence the lawsuit. Additionally, Merchants stated, "[o]f course, we are also open to discussing a global settlement of all claims in this lawsuit."

On February 28, 2022, LPG filed a motion for summary judgment dismissal of Merchants' third party claims and for sanctions pursuant to CR 11 and RCW 4.84.185, based on the allegation that the claims were frivolous and

___

[4] The complaint was filed in superior court on January 26, 2022. The parties' briefing and the record indicate that the complaint was served on Merchants in December 2021, after, as described infra, Merchants sought to settle Trahan's claims.

[5] Peter Schneider, counsel for Trahan, responded in an e-mail to the request to provide a retention agreement by stating that he had "never been asked to prove [his] authority to represent a client in [his] entire career practicing law." He refused, at that time, to provide Merchants with such an agreement.

filed in bad faith. In support of its motion, LPG included a declaration signed by Trahan's counsel, Peter Schneider, stating that Trahan had authorized him to commence the lawsuit. Schneider elaborated, "I signed the summons and complaint pursuant to Rule 11, specifically because Plaintiff authorized me to file this lawsuit." He agreed to provide Trahan's legal services agreement to the court for in camera review. Finally, he stated he is a "Consumer Protection Attorney" and that neither he nor LPG is a "Credit Repair Organization."

Following a discovery conference, LPG provided to Merchants the redacted copy of its legal services agreement with Trahan as well as a declaration from Trahan. Trahan's declaration stated that he had entered into the legal services agreement that authorized LPG to initiate lawsuits against his creditors on his behalf and, specifically, that he had authorized LPG to represent him in this litigation. Merchants thereafter filed in the superior court a notice of deposition seeking to depose Trahan on May 20, 2022.

On March 31, 2022, Merchants filed a CR 56(f) motion to continue LPG's motion for summary judgment in order to obtain Trahan's deposition testimony prior to providing a response to the summary judgment motion. Merchants argued that it "needs an opportunity to cross-examine Mr. Trahan to show that the self-serving declaration and attachment did not, in fact, authorize LPG to bring this lawsuit, prior to this lawsuit being filed." LPG opposed the motion for continuance and renewed its request for "an award of sanctions against Merchants and its counsel for filing a frivolous and meritless claim in bad faith,

4

and furthering the transgression through this motion." On April 20, 2022, the trial court denied Merchants' CR 56(f) motion to continue.

On April 22, 2022, the trial court heard oral argument on LPG's motion for summary judgment dismissal of Merchants' third party claims and for sanctions against Merchants. The court noted that it was "taken aback that a third-party complaint was filed," rather than a motion for CR 11 sanctions, given Merchants' allegation that LPG had initiated a lawsuit without authorization to do so. Following oral argument, the court admonished Merchants, stating:

> This Court has a rule, a basic rule. Try the case, not each other. That's basic. It's basic professionalism. It's basic comportment that this Court expects of people who are -- are licensed and privileged to practice the law. The rules set up guardrails in the hopes that everybody comes in, presents their evidence, and we can proceed to the merits of the underlying issues before us.
> Things like this do call into question what the purpose of this is. It detracts from the issues that should be litigated and should be before the Court. There is no legal basis for a complaint in this case. None.

The court further indicated that Merchants, rather than "trying the merits of the case," was "engag[ing] in behavior that's harassing and annoying opposing counsel." The court found that filing the third party complaint was not "done in good faith," but declined to impose CR 11 sanctions against Merchants' attorney due to the "collateral consequences" of such sanctions. The court did, however, award attorney fees and costs to LPG.

On April 28, 2022, the trial court entered an order finding that, viewing the evidence in the light most favorable to Merchants, "there is no legal basis in law or fact" for Merchants' third party claims; that the claims "lack merit" and "were

5

filed without proper inquiry into the law and facts" pertinent to the claims; and that the claims "were filed in bad faith and for the purpose of harassment." The court found that, pursuant to RCW 4.84.185, LPG was entitled to an award of costs and attorney fees for defending against the claims. The court thus dismissed with prejudice Merchants' third party claims against LPG.

LPG thereafter filed a motion for an award of fees and costs pursuant to RCW 4.84.185 wherein it requested an award of $25,600 in fees, with an added lodestar multiplier that would double the fees to $51,200, as well as costs of $430. On May 18, 2022, the trial court entered an order on the motion that found that sanctions were appropriate pursuant to RCW 4.84.185 as Merchants' claims against LPG were "frivolous, had no merit ('none'), and were filed in bad faith" and, thus, awarded LPG $25,600 in attorney fees and $430 in costs. On May 18, 2022, the court entered judgment against Merchants for $26,030.

Merchants then appealed to this court. A hearing on the appeal was set for July 26, 2023. However, on July 18, 2023, we received a motion for stay of proceedings in which LPG explained that it had filed for Chapter 11 Bankruptcy on March 20, 2023 and the appeal, therefore, was subject to the automatic bankruptcy stay provision of 11 U.S.C. § 362(a). Accordingly, the proceedings were stayed and the hearing was stricken.

In April 2024, the bankruptcy court granted Merchants relief from the automatic bankruptcy stay with two conditions. First, in order to minimize the cost to the bankruptcy estate, the parties waived oral argument, thus allowing this court to reach a decision based on the briefing already submitted. Second,

the relief from stay was limited to a decision and opinion in this appeal such that any additional litigation, if desired, would require a further motion for relief from stay. We proceeded with the appeal and issue our opinion today.

II

Merchants asserts that its third party claims against LPG were supported by the facts and law and, thus, the trial court erred by concluding that the claims were frivolous and by awarding attorney fees and costs to LPG pursuant to RCW 4.84.185.[6] We agree with the trial court that the claims were frivolous.

An award of attorney fees authorized by statute, including an award granted pursuant to RCW 4.84.185, "is left to the trial court's discretion and will not be disturbed 'in the absence of a *clear* showing of abuse of discretion.'" Fluke Cap. & Mgmt. Servs. Co. v. Richmond, 106 Wn.2d 614, 625, 724 P.2d 356 (1986) (quoting Mktg. Unlimited, Inc. v. Jefferson Chemical Co., 90 Wn.2d 410, 412, 583 P.2d 630 (1978)). "A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds." Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 339, 858 P.2d 1054 (1993).

RCW 4.84.185 provides that

> [i]n any civil action, the court having jurisdiction may, upon written findings by the judge that the action, counterclaim, cross-claim, third party claim, or defense was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of

---

[6] In both the trial court and on appeal both parties treat the phrase "was frivolous and advanced without reasonable cause" contained in RCW 4.84.185 as requiring only proof of frivolity to be satisfied. We decide this case based on the manner in which it was litigated.

attorneys, incurred in opposing such action, counterclaim, cross-claim, third party claim, or defense.

The purpose of RCW 4.84.185 "is to discourage frivolous lawsuits and to compensate the targets of such lawsuits for fees and expenses incurred in fighting meritless cases." Biggs v. Vail, 119 Wn.2d 129, 137, 830 P.2d 350 (1992) (Biggs I). "'A lawsuit is frivolous when it cannot be supported by any rational argument on the law or facts.'" Skimming v. Boxer, 119 Wn. App. 748, 756, 82 P.3d 707 (2004) (quoting Tiger Oil Corp. v. Dep't of Licensing, 88 Wn. App. 925, 938, 946 P.2d 1235 (1997)).

We first address the trial court's determination that the CROA claim was frivolous.

A

Congress enacted the CROA "to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services" and "to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. §1679(b)(1), (2). The statute prohibits making "untrue or misleading representation of the services of the credit repair organization" or engaging in fraudulent or deceptive practices regarding the services of a credit repair organization. 15 U.S.C. § 1679b(a)(3), (4). When a credit services organization contract does not comply with the terms and conditions set forth in the statute, see 15 U.S.C. §1679d, the contract at issue is void and unenforceable. 15 U.S.C. §1679f(c)(1), (2).

Merchants contends that LPG is a "credit repair organization" pursuant to the CROA and that its purported failure to provide "a CROA-compliant contract" indicates that it violated that statute. Br. of Appellant at 24-26. According to Merchants, "[t]he lack of a CROA-compliant contract between LPG and Plaintiff – and therefore the lack of a valid contract between LPG and Plaintiff – means that LPG had no authority to commence this lawsuit." This claim lacks both factual and legal support.

1

As the basis for the CROA claim, Merchants asserts that LPG was limited by the terms of the power of attorney that it provided to Merchants for the purpose of obtaining documentation regarding Trahan's potential claims. According to Merchants, the limiting language in the power of attorney indicates that LPG lacked the authority to file this lawsuit. This assertion has no factual support in the record.

The power of attorney signed by Trahan and provided to Merchants indeed states that "[t]he duties performed by [LPG] will be limited in scope to the above-mentioned actions," which include contacting Trahan's creditors regarding past due accounts, sharing his personal information with those creditors, and offering settlement terms to resolve past due accounts on Trahan's behalf. While this indicates that LPG's duties pursuant to the power of attorney are limited, Merchants provides no evidence that this language defines the entire scope of LPG's legal representation of Trahan.

9

Rather, the record includes declarations of both Trahan and Schneider, Trahan's attorney at LPG, stating that Trahan in fact authorized LPG to commence this lawsuit against Merchants. In addition, the record includes a redacted copy of the legal services agreement entered into between LPG and Trahan in December 2020, which states that LPG will "investigate [Trahan's] delinquent accounts . . . up to and including the initiation of lawsuits on [his] behalf against [his] creditors and their third-party debt collectors." In other words, the record clearly demonstrates that LPG was, indeed, authorized to initiate this lawsuit on Trahan's behalf.

Merchants nevertheless asserts that, due to the power of attorney, LPG exceeded its authority by filing this lawsuit. However, nothing in the language of the power of attorney purports to either define the full scope of authority granted to LPG by Trahan or invalidate the legal services agreement. Moreover, Merchants cites to no authority indicating that merely signing a power of attorney, as a matter of law, invalidates prior agreements. Accordingly, there is no basis in fact for Merchants' assertion that LPG was unauthorized to initiate a lawsuit on Trahan's behalf and, thus, no basis in fact for the third party CROA claim asserted by Merchants against LPG.

2

As to the legal basis for the CROA claim, Merchants asserts that LPG is a "credit repair organization" and therefore must abide by the terms of the applicable statute. The CROA defines "credit repair organization" as:

10

> any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform . . . any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of
>
> > (i) improving any consumer's credit record, credit history, or credit rating; or
> >
> > (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

15 U.S.C. § 1679a(3)(A). If, as Merchants alleged, LPG is a credit repair organization, a contract between Trahan and LPG must be CROA-compliant or would be void and unenforceable.

In support of this claim, Merchants cites to Taylor-Burns v. AR Resources, Inc., 268 F. Supp. 3d 592 (S.D.N.Y. 2017). In that case, Credit Shield 360, "a credit repair agency," sent a letter disputing a debt to AR Resources, Inc., a debt collection agency, on behalf of Tonya Taylor-Burns. Taylor-Burns, 268 F. Supp. 3d at 593-94. Taylor-Burns thereafter filed a complaint against AR Resources, alleging a violation of the Fair Debt Collection Practices Act due to the collection agency's failure to report the debt as disputed. Taylor-Burns, 268 F. Supp. 3d at 593. AR Resources sought dismissal of the complaint on the basis that the contract between Taylor-Burns and the credit repair agency did not meet the CROA requirements. Taylor-Burns, 268 F. Supp. 3d at 596. The federal district court held that the agreement failed to comply with multiple CROA provisions and, thus, was void and unenforceable. Taylor-Burns, 268 F. Supp. 3d at 597. The court concluded that the absence of a CROA-compliant contract meant that the credit repair agency was without authority to send the dispute letter on Taylor-Burns' behalf. Taylor-Burns, 268 F. Supp. 3d at 597.

11

Here, Merchants does not point to any particular agreement that, according to its contention that LPG is a credit repair organization, must be CROA-compliant. Nor does Merchants establish how the fee agreement, the only contract between LPG and Trahan in the record, fails to comply with the CROA. Rather, Merchants vaguely asserts that "LPG lacked authority to file this lawsuit, either because it was limited by the express terms of the [power of attorney] or because any contract LPG had was not CROA-compliant." Br. of Appellant at 26. Merchants does not provide argument as to whether "any contract" between LPG and Trahan was "CROA-compliant." Without a noncompliant contract, there is no legal basis for this claim.

Even if Merchants could establish that LPG lacked a CROA-compliant contract with Trahan, it is not apparent that the statute would provide any relief to Merchants. The CROA regulates credit reporting and the unfair and deceptive practices of credit repair organizations and, under the terms of the statute, invalidates noncompliant contracts relating to those subjects. The CROA provides that "[a]ny person who fails to comply with any provision of this subchapter with respect to any other person shall be liable *to such person*" for punitive damages and attorney fees. 15 U.S.C. §1679g(a) (emphasis added). Given the plain language of this statute, there is no indication that LPG could be liable to Merchants pursuant to the statute.

Additionally, Merchants fails to prove that LPG itself is subject to the CROA as a "credit repair organization."[7] Merchants provided various evidence in an attempt to demonstrate that LPG is a "credit repair organization." First, it provided a declaration of an officer of its company stating that LPG represented itself as a "credit repair company" during a call with Merchants. The notes from the call indicate that the representative from LPG "seem[ed] confused about what they do." According to the notes, the LPG representative initially stated that LPG is "an atty offc.," but then replied in the affirmative when asked if it is a "debt repair co." Merchants also provided a declaration from a manager at Qualstar, the entity that holds the judgment against Trahan, stating that account notes indicate that Trahan conveyed that he had spoken to "a debt consolidation company"—presumably referring to LPG.

However, these declarations do not indicate that LPG is a "credit repair organization" pursuant to the CROA or that it represented itself to Merchants as such. As LPG points out, the lawsuit initiated on behalf of Trahan addresses Merchants' attempt to collect an allegedly unlawful amount of interest on the judgment entered against him. There is no evidence that Trahan retained LPG to improve his credit record, credit history, or credit rating. See 15 U.S.C. § 1679a(3) (defining "credit repair organization" as a person who provides services to "improv[e] any consumer's credit record, credit history, or credit rating"). Moreover, the LPG representative's affirmative answer when asked whether LPG

---

[7] We note that whether LPG is a credit repair organization and subject to the CROA has a factual as well as legal component. Because the required RCW 4.84.185 analysis addresses the lack of both legal and factual bases, precise categorization is unnecessary.

was a "debt repair co." does not indicate that LPG was, in fact, providing such services to Trahan. Similarly, Trahan's general statement that he had spoken to "a debt consolidation company" does not identify LPG as the company or specify the type of services sought. In short, the declarations submitted by Merchants do not demonstrate that LPG is a "credit repair organization" subject to the legal requirements of the CROA.[8]

Thus, there is no support in the record that LPG was acting herein as a credit repair organization for the purpose of the CROA, that a CROA-compliant contract was necessary, or that LPG acted without Trahan's authority in commencing this lawsuit. Merchants' CROA claim cannot be supported by any rational argument on the law or facts. See Skimming, 119 Wn. App. at 756. Accordingly, the trial court did not err in determining that Merchant's CROA claim is frivolous.

---

[8] In asserting that LPG is a "credit repair organization," Merchants additionally provided general evidence about LPG. Specifically, Merchants provided: (1) a screenshot from a Google search for "'litigation practice group' & 'credit repair,'" (2) information from LPG's website regarding "debt relief" and the services it provides in negotiating with creditors, (3) a notice of removal from the federal district court regarding a proposed class action asserting CROA claims against LPG, and (4) a printout from the Better Business Bureau website listing complaints against LPG regarding credit-related services.

In a statement of additional authorities, Merchants also submitted an order of the U.S. Judicial Panel on Multidistrict Litigation, denying the centralization of actions pending against LPG in nine districts. Each of those pending actions involves allegations that LPG violated the CROA "by falsely representing to clients that it would remove debts from their credit reports and improve their credit ratings." See In Re: The Litigation Practice Group, PC, Credit Repair Organization Act (CROA) Contract Litigation, 658 F. Supp. 3d 1379 (2023).

This general evidence (setting aside the question of whether the federal court's order can be considered to be "evidence") is not directly pertinent to the determination of whether LPG is acting as a "credit repair organization" in representing Trahan herein.

B

Merchants also brought a claim against LPG for alleged violations of the CPA. "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." Panag v. Farmer's Ins. Co. of Wash., 166 Wn.2d 27, 37, 204 P.3d 885 (2009). "Failure to satisfy even one of the elements is fatal to a CPA claim." Sorrel v. Eagle Healthcare, Inc., 110 Wn. App. 290, 298, 38 P.3d 1024 (2002).

As with the CROA claim, Merchants' CPA claim is premised on its contention that LPG did not have the authority to commence this lawsuit on Trahan's behalf because the power of attorney did not bestow such authority. According to Merchants, commencement of lawsuits without authorization is an action that occurred in trade or commerce, affects the public interest, and caused harm by necessitating the retention of an attorney. As such, Merchants contends that its CPA claim against LPG had both a basis in fact and in law and, thus, that the trial court erred by imposing attorney fees and costs pursuant to RCW 4.84.185. Again, Merchants is incorrect.

1

First, Merchants' lawsuit against LPG, Trahan's attorney in his litigation against Merchants, has no basis in law. This court has established that a CPA claim cannot lie against the attorneys of a litigation opponent. "The provision of legal services does not generally fall within the definition of 'trade or commerce,' except as those services relate to the 'entrepreneurial aspects' of the practice of

15

law." Eriks v. Denver, 118 Wn.2d 451, 463-64, 824 P.2d 1207 (1992) (quoting

Short v. Demopolis, 103 Wn.2d 52, 60-61, 691 P.2d 163 (1984)). Moreover, our

courts have recognized that permitting a CPA claim against a litigation

opponent's attorney "infringes on the attorney-client relationship." Jeckle v.

Crotty, 120 Wn. App. 374, 384, 85 P.3d 931 (2004).[9]

Here, Merchants contends that "[c]ommencing litigation without the

knowledge of a consumer for the purpose of increasing the amount of money the

law firm can get from the litigation" implicates the entrepreneurial aspects of the

practice of law. Br. of Appellant at 31-32. However, because there is no

indication that LPG has engaged in such a practice, Merchants fails to establish

an entrepreneurial aspect of the practice of law that would amount to trade or

commerce as required for a CPA claim. Thus, Merchants has no cognizable

CPA claim against LPG.

2

In addition, Merchants' CPA claim against LPG has no factual basis

because Merchants cannot prove the central premise of its claim—that LPG did

---

[9] In Jeckle, we cited to a Connecticut case in which the court held that "a consumer protection action did not lie in a case involving an attorney's execution of a judgment against the plaintiff." Jeckle, 120 Wn. App. at 384. The Connecticut court reasoned that

> "[p]roviding a private cause of action under [the consumer protection law] to a supposedly aggrieved party for the actions of his or her opponent's attorney would stand the attorney-client relationship on its head and would compromise an attorney's duty of undivided loyalty to his or her client and thwart the exercise of the attorney's independent professional judgment on his or her client's behalf."

Jeckle, 120 Wn. App. at 384-84 (internal quotation marks omitted) (quoting Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Inv., LP, 260 Conn. 766, 783-84, 802 A.2d 44 (2002)).

We approved of this holding almost a decade ago in an unpublished decision, Benz v. Rashleigh, No. 72225-5-I, slip op. at 7 (July 27, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/722255.pdf, stating that a "private CPA claims may not be raised against an opposing party's attorney." Thus, we consider the rule set forth two decades ago in Jeckle to be well settled.

not have permission to file the lawsuit on Trahan's behalf. The language in the power of attorney, while limiting LPG's authority to performing the duties described therein, in no way purports to define the scope of LPG's legal representation of Trahan. Rather, the legal services agreement between LPG and Trahan demonstrates that LPG did, indeed, have the authority to commence this lawsuit. The declarations of Trahan and Schneider further demonstrate that authority.

Merchants' CPA claim cannot be supported by any rational argument on the law or facts. See Skimming, 119 Wn. App. at 756. Thus, the trial court did not err in determining that Merchants' CPA claim is frivolous.

The trial court did not abuse its discretion in finding that Merchants' claims had no basis in law or fact, and, therefore, were frivolous. Accordingly, the trial court properly exercised its discretion to award reasonable attorney fees and costs to LPG pursuant to RCW 4.84.185.

III

Merchants further contends that the trial court erred by dismissing on summary judgment its third party CROA and CPA claims against LPG. However, each of these claims is frivolous, and, as such, there is no genuine issue of material fact remaining to preclude summary judgment dismissal of each claim. LPG is entitled to judgment as a matter of law on the third party claims asserted by Merchants.

"In reviewing a summary judgment order, the appellate court evaluates the matter de novo, performing the same inquiry as the trial court." Snohomish

17

County v. Rugg, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002).  Summary judgment is appropriate only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  CR 56(c).  "All reasonable inferences must be considered in the light most favorable to the nonmoving party, and summary judgment may be granted only if a reasonable person could reach but one conclusion."  Johnson v. Recreational Equip., Inc., 159 Wn. App. 939, 954, 247 P.3d 18 (2011).  In opposing a motion for summary judgment, "a nonmoving party may not rely on speculation or on argumentative assertions that unresolved factual issues remain."  White v. State, 131 Wn.2d 1, 9, 929 P.2d 396 (1997).

1

According to Merchants, the trial court erred by granting summary judgment dismissal of its CROA claim because there is a genuine issue of material fact regarding whether LPG is a "credit repair organization" pursuant to the statute.  The record does not support this assertion.

Here, LPG is representing Trahan against Merchants, a debt collection agency, regarding Merchants' attempt to collect on a judgment entered against Trahan.  The declarations submitted by Merchants do not create an issue of fact regarding whether LPG is providing services to improve Trahan's credit record, history, or rating, such that LPG would be subject to the CROA.

Merchants next asserts that genuine issues of material fact exist regarding whether Trahan "rescinded limitations he placed" on LPG when he signed the power of attorney and "whether LPG filed a lawsuit without Mr. Trahan's

approval." Br. of Appellant at 44. However, the record nowhere suggests that Trahan placed limitations on the scope of LPG's representation by signing the power of attorney. Moreover, Merchants' assertion that LPG was without the authority to commence this lawsuit is pure speculation. Merchants may not rely on such speculation in asserting that unresolved issues of fact preclude summary judgment. See White, 131 Wn.2d at 9. Merchants points to nothing in the record to challenge Trahan's and Schneider's declarations stating that LPG had authorization to file the lawsuit. Thus, Merchants fails to establish that a genuine issue of material fact exists regarding LPG's authority to file this lawsuit. The trial court did not err in its entry of the order on summary judgment and dismissal of the CROA claim.

2

As to the CPA claim, Merchants contends that it has support for all of the elements of a CPA claim. We disagree and conclude that summary judgment dismissal was warranted.

As previously set forth, to sustain a CPA claim the plaintiff must demonstrate: "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." Panag, 166 Wn.2d at 37. As all five elements are required, the finding that any one element is not met is fatal to the claim. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 793, 719 P.2d 531 (1986). Here, Merchants failed to prove an unfair or

19

deceptive act in trade or commerce and, thus, LPG is entitled to summary judgment as a matter of law.

As discussed above, the provision of legal services does not generally fall within the definition of "'trade or commerce'" as required for a CPA claim. Eriks, 118 Wn.2d at 463-64 (quoting Short, 103 Wn.2d at 60-61). Merchants has not established that LPG engaged in trade or commerce as opposed to merely providing legal services to represent its litigation opponent. Pursuant to Jeckle, a CPA suit against a litigation opponent's lawyer is not a cognizable claim. The failure to establish this element of a CPA claim, alone, is fatal to Merchants' CPA cause of action.

However, Merchants fails on additional elements as well. First, Merchants does not demonstrate that LPG engaged in an unfair or deceptive act. A practice is unfair or deceptive if "it had the capacity to deceive a substantial portion of the public." Panag, 166 Wn.2d at 47. Merchants asserts that LPG violated the CPA by commencing this lawsuit without Trahan's authorization. However, again, this contention is unsupported by the record which clearly shows that Trahan and LPG entered into an agreement that provided authorization to file this lawsuit.

In addition, because there is no factual basis for Merchants' assertion that LPG lacked authority to commence the lawsuit, there is no rational argument that any such "practice" affects the public interest or caused injury to Merchants. The CPA claim fails on this element as well.

Merchants failed to raise any genuine issues of material fact as to its CROA and CPA claims. Accordingly, LPG was entitled to summary judgment as

20

a matter of law on both claims. The trial court's entry of an order dismissing Merchants' claims against LPG was not erroneous.

IV

Merchants asserts that the trial court erred by denying its CR 56(f) motion for a continuance in order to depose Trahan. This assertion fails because Merchants did not state with specificity what evidence would be established through additional discovery and, furthermore, any such evidence would not raise a genuine issue of material fact.

Pursuant to CR 56(f), the court may order a continuance to allow a nonmoving party to obtain discovery necessary to respond to the motion "[s]hould it appear from the affidavits of a party opposing the motion that, for reasons stated, the party cannot present by affidavit facts essential to justify the party's opposition." "Where a party knows of the existence of a material witness and shows good reason why the witness' affidavit cannot be obtained in time for the summary judgment proceeding, the court has a duty to give the party a reasonable opportunity to complete the record before ruling on the case." Coggle v. Snow, 56 Wn. App. 499, 507, 784 P.2d 554 (1990). However, the trial court may deny a CR 56(f) motion for continuance when "(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact." Turner v. Kohler, 54 Wn. App. 688, 693, 775 P.2d 474 (1989). We review a trial court's decision to deny a continuance for an abuse of

discretion.  West v. Seattle Port Comm'n, 194 Wn. App. 821, 834, 380 P.3d 82 (2016).

Here, in its CR 56(f) motion, Merchants asserted that unspecified "anomalies in [the legal services agreement] . . . call it into question" and that "the evidence anticipated is evidence that raises genuine issues of material fact about Plaintiff's credibility and whether the heavily redacted document provided to Merchants permitted this lawsuit to be filed despite the limitations in the [power of attorney]."  Merchants "need[ed] an opportunity to cross-examine Mr. Trahan to show that the self-serving declaration and attachment did not, in fact, authorize LPG to bring this lawsuit."

However, Trahan had already stated by declaration that he had authorized LPG to commence the lawsuit.  Merchants' vague assertions of "anomalies" and "evidence that raises genuine issues of material fact" do not sufficiently state the pertinent evidence that would be obtained through Trahan's deposition.  See Turner, 54 Wn. App. at 693.  There is no basis to believe that Trahan's testimony would have been anything other than that which was already established—that he hired LPG and signed a standard fee agreement giving permission to act on his behalf up to an including the filing of a lawsuit.

Moreover, even if Trahan testified in contradiction to his declaration, Merchants would nevertheless be unable to meet the legal elements of its CROA and CPA claims against LPG, as discussed above.   Trahan would not have identified a document that was subject to the CROA that would be invalid so as to entitle Merchants to any relief.  Nor would Trahan's deposition have resulted in

facts leading to a legally cognizable CPA claim based on LPG's provision of legal services to Trahan.

Accordingly, Merchants did not specify in its CR 56(f) motion the pertinent evidence that would be obtained through its deposition of Trahan and there is no indication that any such evidence would raise an issue of material fact. The trial court did not abuse its discretion in denying Merchants' motion for a continuance.

V

Merchants additionally contends that the trial court abused its discretion by awarding attorney fees and costs to LPG pursuant to RCW 4.84.185 because, Merchants asserts, (1) sanctions should not be used "as a fee-shifting mechanism," and (2) the trial court did not reduce the amount of fees for duplicative and unnecessary work. Merchants is incorrect.

"Under Washington law, a trial court may grant attorney fees only if the request is based on a statute, a contract, or a recognized ground in equity." Gander v. Yeager, 167 Wn. App. 638, 645, 282 P.3d 1100 (2012). We apply a two-part review to awards or denials of attorney fees: we review the legal basis for the award de novo, while we review the amount of the award for abuse of discretion. Gander, 167 Wn. App. at 647. As discussed above, Merchants' claims were properly determined to be frivolous. Accordingly, the trial court did not err in its determination that RCW 4.84.185 was a proper legal basis to award attorney fees and costs to LPG.

Merchants' remaining arguments as to the attorney fee award dispute the amount awarded. "An appellate court will uphold an attorney fee award unless it

finds the trial court manifestly abused its discretion." Berryman v. Metcalf, 177 Wn. App. 644, 656-57, 312 P.3d 745 (2013). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. Wash. State Physicians Ins. Exch. & Ass'n, 122 Wn.2d at 339. "A determination of reasonable attorney fees begins with a calculation of the 'lodestar,' which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Berryman, 177 Wn. App. at 660.

A

Merchants first asserts that the superior court erred in applying the lodestar methodology to calculate the attorney fee award. This is so, Merchants avers, because sanctions should be not used "as a fee-shifting mechanism." In support of this argument, Merchants cites Biggs v. Vail, in which our Supreme Court held that "CR 11 sanctions should be limited to the minimum necessary, and should not be used as a fee-shifting mechanism." 124 Wn.2d 193, 201, 876 P.2d 448 (1994) (Biggs II).

However, here, the trial court ordered Merchants to pay LPG its reasonable expenses pursuant to RCW 4.84.185, not pursuant to CR 11. The trial court explicitly informed Merchants that it would not impose CR 11 sanctions, and the trial court's orders cite only RCW 4.84.185 as the basis for the award of fees. Thus, Merchants' reliance on Biggs II is misplaced.

Moreover, RCW 4.84.185, by its terms, provides that such expenses include "fees of attorneys." Contrary to Merchants' claim, RCW 4.84.185 is indeed a "cost-shifting statute," the purpose of which is "to compensate those

24

parties forced to defend against a frivolous claim or defense." Highland Sch. Dist. No. 203 v. Racy, 149 Wn. App. 307, 316, 202 P.3d 1024 (2009).[10] Therefore, the trial court did not abuse its discretion by commencing its determination of a reasonable attorney fee award by calculating the lodestar.

B

Merchants next asserts that the trial court abused its discretion by not reducing the amount of the fee award based on the performance of what it claims to be duplicative or unnecessary work. Specifically, Merchants contends that the award was not limited to the costs and fees associated with summary judgment and that "[m]uch work billed would have been unnecessary" if LPG had provided Merchants with the Trahan and Schneider declarations and the legal services agreement earlier in the proceedings. Br. of Appellant at 57. First, the fees requested by LPG, and awarded by the trial court, are those incurred after the filing of Merchants' third party complaint, thus indicating that those fees were associated with defending against Merchants' frivolous claims. Second, given the frivolous nature of those claims, and the absurdity of Merchants' request that LPG "prove" that it was authorized to file this lawsuit, we decline to reverse the trial court's fee award on the basis that LPG did not provide such "proof" to Merchants at an earlier time.

We reverse a trial court's award of attorney fees and costs only for a

---

[10] Merchants cites Highland School District No. 203, 149 Wn. App. 307, in asserting that the trial court erred by applying the lodestar methodology in awarding expenses pursuant to RCW 4.84.185. However, Division Three therein held that the trial court did *not* abuse its discretion *by not employing* the lodestar method when awarding expenses pursuant to the statute. Highland Sch. Dist. No. 203, 149 Wn. App. at 316. The opinion does not support Merchants' assertion that application of the methodology herein *was* an abuse of discretion.

manifest abuse of discretion. <u>Berryman</u>, 177 Wn. App. at 656-57. The trial court here made findings regarding the reasonableness of the attorney's hourly rate and the hours expended in defending against Merchants' frivolous claims. The court declined to impose the lodestar multiplier requested by LPG. Because Merchants does not demonstrate an abuse of discretion, we affirm the award.

VI

LPG avers that it is entitled to an award of attorney fees and costs on appeal "pursuant to Court Rules, Rules of Appellate Procedure, the underlying statute (RCW 19.86.090), and RCW 4.84.185."[11] Br. of Resp't at 59. Additionally, citing "Rule 11," LPG requests the imposition of punitive sanctions against Merchants, payable to a nonprofit consumer protection organization. We address these asserted grounds individually.

A

LPG requests that this court issue punitive sanctions against Merchants, to be paid to a nonprofit consumer protection agency, "pursuant to Rule 11." Br. of Resp't at 59. While this court reviews trial court decisions to impose CR 11 sanctions, it does not itself impose such sanctions. <u>State v. A.W.</u>, 181 Wn. App. 400, 413, 326 P.3d 737 (2014). "[T]he rule [CR 11] is intended for use in superior court, not in the appellate court." <u>Building Indus. Ass'n of Wash. v. McCarthy</u>, 152 Wn. App. 720, 750, 218 P.3d 196 (2009). Accordingly, we will not impose CR 11 sanctions.

---

[11] Both parties request an award of attorney fees and costs on appeal. However, as we agree with the trial court's determination that Merchants' claims were frivolous, Merchant is not the prevailing party on appeal and, accordingly, is not entitled to an award of fees and costs.

B

Next, LPG specifically requests fees pursuant to the CPA, RCW 19.86.090. However, RCW 19.86.090, by its terms, authorizes an award of attorney fees only to a *prevailing plaintiff* in a CPA action. RCW 19.86.090; Eng v. Specialized Loan Servicing, 20 Wn. App. 2d 435, 453-54, 500 P.3d 171 (2021). Because LPG is not the plaintiff in this third party action, the statute does not entitle it to such an award.

C

LPG next contends that it is entitled to an award of attorney fees and costs on appeal pursuant to the same statute relied on by the trial court to award fees, RCW 4.84.185.

However, our published decision in Robinson v. American Legion Department of Washington, Inc., 11 Wn. App. 2d 274, 298, 452 P.3d 1254 (2019), casts doubt on whether RCW 4.84.185 authorizes an award of attorney fees on appeal. The court therein "assum[ed] without deciding that RCW 4.84.185 authorizes an award of fees on appeal" before concluding that the appeal therein was not frivolous. Robinson, 11 Wn. App. 2d at 298. Thus, in Robinson, we made clear that we consider the applicability of RCW 4.84.185 as a basis for an award of appellate attorney fees to be an open question.

We filed the Robinson decision almost three years before LPG submitted its briefing to this court.[12] Despite this, LPG failed to acknowledge, much less

---

[12] Robinson was filed on November 25, 2019. Respondent's briefing was filed with this court on October 21, 2022.

provide argument, as to the question posed by Robinson. Nor does LPG even attempt to address whether the legislature intended that RCW 4.84.185 should apply on appeal.

Indeed, LPG's request for an award of appellate attorney fees fails to comply with our Rules of Appellate Procedure. The applicable rule provides that "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review . . . the party must request the fees or expenses as provided in this rule." RAP 18.1(a). The rule further requires that "[t]he party must devote a section of its opening brief to the request for the fees or expenses." RAP 18.1(b).

Taken together, the two rule provisions require the requesting party to prove that its entitlement to fees is already established or to prove that fees are warranted when the law in question is unclear or undecided. This entails more than a bald request or list of general authority for an award of attorney fees on appeal. RAP 18.1; Wilson Ct. Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998). Rather, the rule requires reasoned argument as to the applicability of any cited basis for an award of appellate attorney fees. While LPG properly devotes a separate section of its brief to its request, the request lacks any reasoned argument or citation to authority. RAP 18.1(b); Wilson Ct., 134 Wn.2d at 710 n.4. Indeed, LPG does not cite the specific rule, RAP 18.1, that allows us to award attorney fees on appeal. Furthermore, LPG did not attempt to address the issue raised in Robinson. Because LPG failed to

prove its entitlement to an award of appellate attorney fees, we decline LPG's request for such an award.

Affirmed.

_____
Dwyer, J.

WE CONCUR:

_____   _____
Brennan, J.                Smith, C.J.